## THE STATE v. J. F. SHOUT, Appellant.

### Division Two, January 4, 1915.

1. **INFORMATION: False Pretense.** An information, set out in the opinion, charging the defendants with having obtained from the prosecuting witness certain personal property by means of false and fraudulent statements concerning the ownership, title and character of land, is *held* to contain every essential necessary to properly charge the offense denounced by Sec. 4565, R. S. 1909.

2. **FALSE PRETENSE: Evidence: Deed.** In the prosecution of a defendant for false representations as to his ownership of land, a deed, though not referred to in the information except in general terms, yet being the instrument through which the defendant, represented by his agent, effected the exchange of the land for the personal property of the grantee, is competent evidence, both as tending to establish the offense and to show a completed offense.

3. ———: ———: **Cross-Examination: Question Calling for Conclusion.** In a prosecution for obtaining property by false pretense it is not error to refuse to permit the prosecuting witness on cross-examination to answer the question: "Why did you part with your property?" the question calling for a conclusion and the defendant's counsel stating no reason for it.

4. ———: ———: **Similar Transactions.** In a prosecution for obtaining property by false pretense, evidence of similar transactions, whether prior or subsequent to the one under review, is admissible as tending to prove a common intent on the part of the defendants to cheat and defraud; and, therefore, it is competent for the State to show by the prosecuting witness that the defendants, after the exchange of his personal property for land which one of them claimed to own, asked him to be permitted to "straighten up" the deal and voluntarily stated they had made similar deals and had afterwards straightened them up.

5. ———: ———: **Abstract of Title.** A county recorder of deeds who has made an examination of the records of deeds in his

office pertaining to a certain tract of land and has testified
that he is familiar with the entries in said records, is compe-
tent to state the result of his search, in a prosecution of a
defendant for having by false pretense obtained the personal
property of another by exchanging therefor a deed to land he
did not own, and to testify that what purports to be an ab-
stract of the title, which had been exhibited to such other,
does not show all the conveyances of the land.

6. ———: ———: Reliance on Opinion of Abstracter. It is not
competent to permit defendant, in a prosecution for false pre-
tense in having exchanged land he did not own for the per-
sonal property of the prosecuting witness, to testify that
he relied upon the opinion of an abstracter who was not a
lawyer as to the title and to whom he submitted a pretended
abstract for examination. Such reliance is no defense; besides,
such opinion is self-serving, since his belief in the integrity
of the title is based on a memorandum in regard thereto made
at some indefinite time by some unknown person who defend-
ant alone testified was an abstracter.

7. ———: ———: Statements by Coconspirator After Fraudulent
Transaction: No Request to Restrict Testimony to Witness.
Statements made by one conspirator concerning his connection
with the crime, while not admissible after the consummation
of the common enterprise against his co-conspirator, are ad-
missible against him; and where two were jointly indicted
and tried together and no request was made that the examina-
tion be limited to the conspirator testifying either at the time
of the examination or later by an instruction, the correctness
of the admission of the testimony against the other cannot be
reviewed upon appeal.

8. ———: Circumstantial Evidence. A conspiracy to cheat and
defraud another out of his property by false representations
may be established by circumstantial evidence. No direct
testimony is necessary to show that appellant and his pre-
tended agent knew that appellant did not own the land which
he, pretending to own and exhibiting a spurious abstract of
title showing on its face that he did own, conveyed to the
prosecuting witness in exchange for his personal property.

9. INSTRUCTIONS: As a Whole: Objectionable Clauses. In-
structions should be read together and construed as a whole.
It is not fair to segregate a sentence here and a paragraph
there, and lodge an objection that if such particular sentence
or paragraph does not announce the entire applicable law, it is
error.

Appeal from Jackson Criminal Court.—*Hon. Ralph
S. Latshaw,* Judge.

AFFIRMED.

*Rufus A. Underwood* and *J. H. McVay* for appellant.

*John T. Barker,* Attorney-General, and *W. T. Rutherford,* Assistant Attorney-General, for the State.

(1) The information properly charges the offense of obtaining property by means of false pretenses and representations. State v. Roberts, 201 Mo. 710; State v. Lovan, 245 Mo. 524; State v. Martin, 226 Mo. 547; State v. Donaldson, 243 Mo. 465; State v. Foley, 247 Mo. 613. (2) The information charges only one offense; therefore, a verdict general in form is correct. State v. Richardson, 248 Mo. 575; State v. Martin, 230 Mo. 692; State v. Lovitt, 243 Mo. 522; State v. Bishop, 231 Mo. 415; State v. Taylor, 202 Mo. 1. (3) Admissions of a defendant are always admissible in evidence against him when freely and voluntarily made. State v. Wilkins, 221 Mo. 444; State v. Green, 220 Mo. 642; State v. Witherspoon, 231 Mo. 706; State v. Roberts, 201 Mo. 702; State v. Aitken, 240 Mo. 262. (4) Testimony by one who had examined the title records, that they did not show certain things, is competent. State v. Roberts, 201 Mo. 702; State v. Dines, 206 Mo. 649. (5) Unless the objection to the admission of evidence is specific, its admission cannot be urged as error on appeal. State v. Kanupka, 247 Mo. 714; State v. Wooley, 215 Mo. 620; State v. Wilson, 223 Mo. 170; State v. Wilson, 225 Mo. 516; State v. Witherspoon, 231 Mo. 720. (6) A statement made by one conspirator concerning the connection of his co-conspirator with the crime, made after its consummation, is competent as to him, and if no objection is made as to its competency as to his co-conspirator, the two being tried jointly, and no request is made that it be limited to the conspirator making it, its admission cannot be re-

viewed on the appeal of the co-conspirator. State v. Aitken, 240 Mo. 262; State v. Copeman, 186 Mo. 108; State v. Gow, 235 Mo. 307; State v. Casto, 231 Mo. 408. (7) A conspiracy to commit a crime may be shown by facts and circumstances from which a conspiracy may be inferred. State v. Sykes, 191 Mo. 62; State v. Darling, 199 Mo. 168; State v. Roberts, 201 Mo. 702; State v. Casto, 231 Mo. 398; State v. Fields, 234 Mo. 615. (8) One proper instruction on the presumption of innocence and one instruction requiring the jury to find the defendant guilty beyond a reasonable doubt is sufficient. State v. Baker, 136 Mo. 80; State v. Fannon, 158 Mo. 156; State v. Gow, 235 Mo. 328. (9) It is only when the State relies upon circumstantial evidence alone that an instruction on circumstantial evidence should be given. State v. Dannelly, 130 Mo. 649; State v. Crane, 209 Mo. 316; State v. Bobbitt, 215 Mo. 10; State v. Hubbard, 223 Mo. 80. (10) Certified copies of instruments of record in Dent county affecting the title to the land in evidence were properly admitted in evidence. Sec. 6310, R. S. 1909; Frank v. Renter, 116 Mo. 517; Baum v. Sauer, 117 Mo. 460.

WALKER, P. J.—The appellant and one W. J. Voss were charged in an information filed in the criminal court of Jackson county with obtaining from one G. F. Vogel certain personal property by means of false statements and fraudulent pretenses and representations under section 4565, Revised Statutes 1909. Upon a joint trial both defendants were convicted and each sentenced to two years' imprisonment in the penitentiary. The appellant, after an unsuccessful attempt to secure a new trial, appealed to this court, gave a bail bond which was approved, and a *supersedeas* was granted pending the review of the case here.

Vogel, the prosecuting witness, a machinist, lived in Kansas City, Missouri, and owned an automobile, a motorcycle and the furnishings for a shooting gal-

lery. He was desirous of disposing of this property.
In a real estate dealer's office in Kansas City he met
Voss, one of the defendants. The latter invited Vo-
gel to come to his (Voss's) office in another building,
and upon his doing so some trades were proposed
which were not consummated. A week later Voss came
to Vogel's home and proposed to trade the latter eighty
acres of land in Dent county, Missouri, for the per-
sonal property before mentioned. Voss said he lived
in Dent county, knew the land and that it was good;
that it was owned by a wealthy old German who had
a good title to it. That night Voss returned to Vo-
gel's home bringing with him what purported to be an
abstract of title to the land made by one J. W. Walms-
ley for the Dent County Abstract Company, and de-
livered it to Vogel, saying it was genuine and showed
a true chain of title from the United States to J. F.
Shout, the appellant, who it was stated was then the
owner. Vogel consented to the trade, and the next
night Voss delivered a deed to him for eighty acres
of land therein described as located in Dent county, the
grantors being J. F. Shout, the appellant, and his wife.
A month later Vogel discovered that the Dent County
Abstract Company and J. W. Walmsley were myths
and that no such company or individual ever had been
or were in Dent county, and that the abstract did not
give a correct chain of title to the land in question
and was otherwise not genuine, and that appellant had
no title to the land. Vogel complained to the appel-
lant, who insisted that he had the title to the land, but
that there were taxes on the land which had not been
paid. In a subsequent interview with appellant and
the defendant Voss, upon being charged with defraud-
ing Vogel, they requested authority to sell the land,
saying that they had straightened up other like deals
in this manner and they would straighten up this one.
The deal was, as stated, made by Voss with Vogel who
did not meet the appellant until after he discovered

that the transaction was fraudulent. The ludicrous irony of the transaction is disclosed when it is shown that Voss, who was the promoter of the fraud, was paid twenty-five dollars by Vogel for effecting the trade.

There was no foundation in fact for the statements made by Voss to influence the actions of Vogel. The land described in the deed from the appellant to Vogel, at the time of the trade, was owned and in the possession on one G. S. Clark, who, supplementing the documentary evidence as to his title, stated that he owned the land and had been in actual possession of it continuously since 1907, and that he had not sold or transferred same. Clark's testimony was corroborated by that of the recorder of Dent county and the owner of the abstracts of titles at Salem, the county seat.

Appellant testified that he never met Vogel or Voss until after the trade in question was made. That he got the land from an old man by the name of Allendorph living in Kansas City, and identified an abstract of title which he stated he had received from Allendorph at that time.

That he placed the land and abstract in the hands of a Mr. Cadien for sale. That the latter had died in August before the trial. That he had never seen the land in question. That he told his agent to have the abstract brought down to date and then deliver it to the "other agent." That he executed the deed, leaving the grantee's name blank, and delivered it to his agent Cadien and did not see the personal property he had traded for until his agent had procured a bill of sale of it.

On cross-examination he said that he got three copies of the abstract from Allendorph. That the abstracts he had were certified, one by J. W. Walmsley and the other by J. W. Steel, and both for the same land and both alike except as to the names of the parties signing the certificates. He did not know Steel or

Walmsley and had never tried to find out anything about them. That he valued the land at $800, and traded it for the automobile, motorcycle and shooting gallery, which articles he afterwards traded off, getting ten acres of land in Florida that he had never seen.

William J. Voss, co-defendant, testified that the first time he ever saw the prosecuting witness was in a Mr. Clay's office in the Century Building, Kansas City. He did not speak to him on that occasion, and about one and one-half hours later Vogel came into his office in the Ridge building and listed the automobiles, etc., with him for trade and a few days later he met Mr. Cadien and mentioned to him that he had these articles for trade and Mr. Cadien submitted the land in question to him for exchange for the automobile. A few days later he saw Vogel and submitted the proposition of trading for this land to him. Vogel authorized him to trade for the land if it was clear. Ten days later he received an abstract of title to the land from Cadien and handed it to Vogel, telling him to have it examined by an attorney; that he did not know anything about the title and that it was up to him to find out what he had. He denied all statements testified to by Vogel as to the value of the land, his acquaintance with it and all knowledge of the supposed owner. Two days after receiving the abstract Vogel came to his office and they together went to Mr. Cadien's office and Vogel made out a bill of sale covering the automobile, etc. That he had met Shout, the appellant, for the first time the day before, when he took him to look at the automobile and other property. That he did not have any interest in the land or other property involved in the trade; that he made no statements about the value of the land, the abstract, the title, the deed, or the owner, because he knew nothing about them.

I.　It is contended that the information is defective. It avers in substance that the defendants contriving, designing and intending to cheat and defraud

**Information.** G. F. Vogel of his money, goods, chattels and personal property, did induce him to sell to the defendants (naming them) certain personal property then owned by him (describing it) for certain real estate located in Dent county, Missouri (described by Government subdivisions); to induce said Vogel to make such trade and exchange as aforesaid and to effect their scheme and design to cheat and defraud, the said defendants (naming them) and each of them did then and there unlawfully, feloniously and designedly and with felonious intent to cheat and defraud him, the said Vogel, of his money, etc., represent, pretend and say to said Vogel that the said J. F. Shout was then and there the owner of the real estate aforesaid, and then and there had good right and title to same, and then and there had good right to sell, transfer and convey said real estate and could pass good title to him, the said Vogel; and to further induce the said Vogel to sell and exchange his said property and effect their scheme and design to cheat and defraud him, they, the said defendants naming them) and each of them, with felonious intent to cheat and defraud the said Vogel, falsely represented, pretended and said to said Vogel that a certain abstract, which they then and there exhibited to said Vogel, purporting to be made by the said Dent County Abstract Company, which said abstract was then and there delivered to said Vogel, was then and there a correct statement of all of the conveyances of said land from the United States patent to same to the date of September ——, 1911.　There is then inserted in the information a copy of the abstract above referred to, which is followed by an allegation that the defendants unlawfully and designedly with felonious intent to cheat and defraud the said Vogel did represent, pretend and say to him that

the said abstract was then and there a true and genuine abstract of title, and correctly set out the conveyances of real estate from the United States patent to the —— day of September, 1911, to the land above described, and that said Vogel believing said false and fraudulent statements by said defendants (naming them) and each of them to be true, and relying thereon, and being deceived thereby, was induced by reason thereof to sell, deliver and exchange, and did then and there sell, deliver and exchange to them, the said defendants, all of his right, title and interest in the above described personal property in exchange for the real estate hereinbefore described. And that said defendants (naming them) and each of them, by means of the said false, fraudulent and felonious statements, pretenses and representations did obtain of and from him, said Vogel, the property above described and set out, of the value of $350, the goods, chattels and the personal property of him, the said Vogel. That in truth and fact the said J. F. Shout was not then and there the owner of the Dent county land above described, or any part thereof, and did not then and there have a good right and title to same, and did not then and there have any right to sell, transfer and exchange said land, and in truth and in fact the abstract hereinbefore set out which they the said defendants (naming them) then and there exhibited and delivered to said Vogel was not then and there a true and general title from the United States patent to date, but was a false, forged and fictitious abstract, all of which they the said defendants (naming them) then and there well and truly knew, etc.

The foregoing information contains all the essentials necessary to properly charge the offense of obtaining goods by false pretenses under the statute (Sec. 4565, R. S. 1909; State v. Foley, 247 Mo. l. c. 628; State v. Donaldson, 243 Mo. 460; State v. Roberts, 201

Mo. 703), and it is not, therefore, subject to valid objection.

II.   The appellant contends that the court committed divers errors in the admission and exclusion of
**Testimony.** testimony: First, in overruling his objection to admitting the deed from Shout to Vogel, on the ground that there was no specific reference in the information to this deed.  The deed in question, while not expressly referred to except in general terms in the information, was the instrument through which the appellant, represented by his agent Voss, effected the exchange by which he secured possession of the property of the prosecuting witness.  It tended, therefore, to establish the offense with which the appellant was charged, and as land can only be transferred or aliened by deed, it was not error to admit the instrument in evidence to show a completed transaction.  [State v. Lovan, 245 Mo. l. c. 536.]

The next contention is in regard to the refusal of the trial court to permit the following question to be answered by the prosecuting witness:  ''Why did you part with your property?''  This at best but called for a conclusion, if answered by the witness.  However, the objection thereto was general, the counsel for appellant stating no reason therefor, and the error if any in refusing to permit it to be answered is not preserved sufficiently to entitle it to be considered.  [State v. Kanupka, 247 Mo. l. c. 714.]

Appellant also complains of the action of the trial court in overruling his objection to this question propounded to Vogel, the prosecuting witness:  ''What if anything did they tell you about making transactions of this kind—similar transactions?''  The prosecuting witness in response to this question testified that appellant and defendant Voss had asked him to be permitted to ''straighten up'' the deal, that they had

263Mo24

made similar deals and had afterwards straightened them up. This statement was an admission on the part of the appellant and Voss of having been engaged in similar transactions to the one with which they were charged in this proceeding, and there being no evidence that the statement was not freely and voluntarily made, the court did not err in its admission, the rule being that evidence of similar transactions whether prior to the one under review or afterwards is admissible as tending to prove a common intent on the part of the defendants to cheat and defraud. [State v. Roberts, 201 Mo. l. c. 726; State v. Wilkins, 221 Mo. 444.] Viewed from another vantage the admission made by the parties was clearly admissible—both were present and whether the proposition to "right matters" was made by appellant or Voss, the other did not deny it, but acquiesced therein.

It is also contended error was committed in overruling appellant's objection to a question asked the recorder of deeds of Dent county by the prosecuting attorney, as follows: "Mr. Smalley: I hand you what purports to be an abstract of title marked 'Exhibit A,' and will get you to tell these gentlemen whether or not that abstract shows all the conveyances of that property from the Government grant to the month of September, 1911, as shown by the records of your office in Dent county, Missouri?" The witness, as the recorder of deeds of Dent county, had in his official possession at Salem, the county seat, the records of the transfers of real estate in that county. He had previously testified that he had examined these records to ascertain in whom the title was vested to the land alleged to have been exchanged by defendants for the personal property described in the information; that he was familiar with the record entries in regard to this land; that the so-called abstract, about which he was questioned and which had in the exchange been sub-

mitted by defendants to the prosecuting witness as presenting a true chain of title to the land, did not do so; that the records containing the true entries of the transfers of this land were contained in twelve or thirteen large volumes in his, the recorder's, office at Salem in Dent county, and that he was not permitted to remove same therefrom. This testimony was given after it had been shown by documentary testimony in whom title to the land was vested, which was other than appellant. Subsequently upon being recalled the witness was asked the question of which appellant complains. It was in effect asking the witness to state what he had or had not found in the records in regard to the land. Having made an examination of same and testified as to his familiarity with the entries it was competent for him to state the result of his search. This court has said under a like state of facts that proof thus elicited is as complete as if the records were present to be inspected. Only in two ways could this proof have been made; one by actual inspection, and the other by the sworn testimony of the legal custodian or someone familiar with their contents who had carefully examined them with a view to establish the fact. [Blodgett v. Schaffer, 94 Mo. l. c. 670; Durham v. Heaton, 28 Ill. l. c. 272.]

Appellant also complains of the court's refusal to permit him on direct examination to answer this question: "Was it on his opinion, after he had examined it, that you relied as to the title?" To understand the setting of this question a knowledge of the examination of appellant by his counsel leading up to it is necessary. It is as follows:

"Q. Did you know anything about the title to the land? A. Well, I had a party examine the title when I got it.

"The Court: Who was that? A. Mr. McKinley.

"Q. A lawyer? A. An abstracter.

"Q. Live here in the city? A. Yes, sir.

"Q. The abstract you have under your arm, is that the one he examined? A. Yes, sir."

The answer to the question, if it had been permitted and had been in the affirmative, would have constituted no defense. Put most strongly for appellant it meant that having had McKinley examine the title to the land appellant's opinion in regard to same was based on this examination. The result of this examination is not disclosed, nor is it shown what the appellant's opinion was as based thereon. The answer to the question was, therefore, excluded if for no other reason than that the question was vague and indefinite and no proper foundation had been laid to authorize same. The ruling of the trial court was proper, however, for a more substantial reason; it was sought by appellant's testimony to establish his belief in the integrity of his title to the land by showing that he relied upon a memorandum made in regard thereto at sometime, somewhere, by McKinley, who is significantly absent at the time of the trial. Even the tyro knows that this character of testimony will not avail as a defense in this character of proceeding; in addition, the answer, if made, would have fallen fairly within the designation of a self-serving declaration.

It is also contended that the admission of statements by one of the defendants after the consummation of the common enterprise, or, concretely, after the effecting of the exchange by which the property was obtained from the prosecuting witness, constituted reversible error.

Statements made by one conspirator concerning his connection with the crime, while not admissible after the consummation of the common enterprise against his co-conspirator, is admissible against him; and where two are jointly indicted and are being tried together and no request is made that the examination be limited to the conspirator testifying, the correctness

of the admission of the testimony against the other cannot be reviewed upon appeal where, as in the case at bar, no objection was made or instruction asked limiting the testimony to the conspirator testifying. [State v. Aitken, 240 Mo. 1. c. 262.]

From all the facts in this case, it is evident that the defendants were acting in concert with a common purpose and intent in the commission of this offense, namely, to secure the property of the prosecuting witness by exchanging therefor the real estate which purported from the deed and the abstracts submitted to the prosecuting witness, to belong to the appellant. Voss, it is true, was the prime mover in the fraud, but his purpose could not have been consummated without his delivery of the deed made by the appellant to the prosecuting witness, and it was necessary that concert of action exist before this could have been brought about. Under this state of facts the testimony of the appellant, or, in fact, of the other defendant, for the purpose of showing a conspiracy was not improper, the rule being that where two persons act in concert in the commission of a crime with a common purpose and intent, statements or declarations of one are admissible against the other. [State v. Copeman, 186 Mo. 109.]

It is further contended that there was no direct evidence against appellant to sustain a verdict of guilty. A conspiracy like any other crime may be shown by circumstantial evidence. [State v. Fields, 234 Mo. 1. c. 623.] The facts and circumstances are ample that appellant and the defendant Voss were acting in concert to accomplish the criminal purpose of obtaining the prosecuting witness's property by means of the false and fraudulent pretense that the appellant was the owner of the land described in the deed made by appellant and his wife and delivered to the prosecuting witness in exchange for his property through the instrumentality of Voss. No direct evi-

dence is necessary to render it apparent that Voss and appellant knew, or by the exercise of the slightest effort could have known, that the latter had no title to the land. Men of the most limited experience do not accept deeds to land for which they pay a considertion, without making at least some inquiry as to the title and value of same, if it be no more than to communicate with the recorder of deeds of the county where the land is located, who could and doubtless would, for such is the custom with this class of officials, have promptly informed the appellant that his deed passed no title and that the paper purporting to be an abstract of the title was not only fraudulent, but that the company by whom it was pretended to have been made, and the abstracter who certified to same, were as "baseless as the fabric of a vision." The celerity with which defendant consummated the trade without examination of the title or material value of the land is a strong circumstance to show that they were indifferent as to the land except as it afforded a means of procuring some tangible property therefor, although the property may have possessed, as they claim, no great value. The vague and indefinite manner in which they testify in regard to the transaction and the atmosphere of the proceeding throughout savor so strongly of fraud that direct testimony, if it could have been procured, was not necessary to sustain a conviction. The jury so found, and, being the sole judges of the weight and effect of the facts presented, their verdict will not be disturbed, although the evidence be largely circumstantial. [State v. Cannon, 232 Mo. 205; State v. Fields, 234 Mo. 615.] Not only is it true, as a general proposition, that the jury are the judges of the sufficiency of the evidence, but, the court having determined in this case that there was evidence of a conspiracy, it remained for the jury to say if one existed and its object. This they did. [State v.

Walker, 98 Mo. 95; State v. Roberts, 201 Mo. l. c. 728.]

III.   Taken as a whole, the instructions covered every phase of the case presented by the testimony. **Instructions.** Instead of construing the instructions together to make, if possible, a harmonious whole, counsel for appellant segregate a sentence here or a paragraph there, and lodge objections thereto on the theory that if such particular sentence or paragraph does not present the entire law applicable, it is error.   This manner of assailing the correctness of instructions is trivial, and finding them, as stated, to fairly and fully present the law according to approved precedents, the objections made are without merit.

No errors having occurred herein warranting a reversal, the judgment of the trial court is affirmed, and it is so ordered.

*Brown* and *Faris, JJ.*, concur.