## THE STATE v. WILLIAM YOUNG, Appellant.

### Division Two, February 15, 1916.

1. **FALSE PRETENSE: Information.** An information which plainly alleges (1) what the pretenses were, (2) to whom they were made, (3) that he to whom they were made relied upon them and, acting upon such reliance, was induced to and did part with his property, (4) that by means of such pretenses said property was obtained, (5) that the property so obtained was owned by the person named, (6) that its value was a named sum, (7) that said pretenses were made by defendant designedly and feloniously with intent to cheat and defraud, and (8) that said pretenses were false, and that defendant knew they were false when he made them, states the component elements of the offense denounced by Sec. 4565, R. S. 1909, as amended by Laws 1911, and is sufficient.

2. ———: ———: **Misjoinder of Offenses: Different Statutes: Tests: Bar.** The legal test of permitted joinder of offenses is not whether the offenses charged in different counts of a single information as having been committed in different ways are, or are not, defined and denounced by different sections of the criminal code, but whether such offenses arose out of the same transaction, and are so far cognate that an acquittal or a conviction of the one would be a bar to a trial for the other.

3. ———: **Instruction: Under Abandoned Count.** An instruction in a prosecution for obtaining property by false pretense may be good under Sec. 4765, R. S. 1909 (as amended in 1913), but not good under Sec. 4565, R. S. 1909 (as amended in 1911); and if the information contains two counts, one charging a crime under section 4565, and the other, a crime under section 4765, and the later count is abandoned, an instruction bottomed on section 4765 and possibly good when tested by it, is bad if it does not meet the requirements of section 4565.

4. ———: ———: **Deception.** Instructions, in a prosecution for the false pretense denounced by Sec. 4565, R. S. 1909 (as amended in 1911), must require that the person alleged to have been defrauded was deceived by the false pretenses made by defendant; and if they do not contain such a requirement, a conviction under that statute cannot stand.

5. ———: **Deception: Knowledge of Falsity.** If the person alleged to have been defrauded knew at the time that defendant's pretenses were false, no crime was committed under section 4565, Revised Statutes 1909.

6. ———: **Promise to Pay: Bank Check.** If at the time defendant offered his check on a certain bank in payment for the mules, the seller was informed that defendant had no funds in that bank, but defendant promised that by the time the check reached the bank the money to pay it would be there, and the check was accepted under such circumstances, no conviction under section 4565 can stand; for the effect of an agreement to have the money in the bank to the pay the check on a future day, was to make of the alleged pretense but a mere promise, and so remove it from the category of crimes.

7. ———: ———: **Made in Good Faith.** Nor need the promise to pay at a future date be made in good faith; for the moment the alleged false pretenses are shown to be naked future promises, the prosecution under section 4565 inevitably and instantly fails.

8. ———: **Evidence of Similar Acts: Instruction: Intent.** Where the information charges the false pretense to be that defendant gave in payment for mules a check on a bank in which he had no funds, it is proper to permit the State to prove that

other checks drawn on the same bank, shortly before or shortly after the offense charged, were, to defendant's knowledge, refused payment for lack of funds, but in such case the jury should be instructed that proof of such other recent and similar crimes is admitted for the sole purpose of showing the intent of defendant in giving the check complained of.

Appeal from Callaway Circuit Court.—*Hon. David H. Harris,* Judge.

REVERSED AND REMANDED.

*J. R. Baker* for appellant.

*John T. Barker,* Attorney-General, and *Thomas J. Higgs,* Assistant Attorney-General, for the State.

(1) The first count of the amended information upon which the prosecuting attorney elected to try the defendant, properly charges the offense of obtaining money under false pretenses. State v. Shout, 263 Mo. 360; State v. Roberts, 201 Mo. 710; State v. Lovan, 245 Mo. 524; State v. Martin, 226 Mo. 547; State v. Donaldson, 243 Mo. 465; State v. Foley, 247 Mo. 607; Sec. 4565, R. S. 1909. (2) In a prosecution for obtaining money under false pretenses, evidence of similar transactions, whether prior to or subsequent to the one under review, is admissible as tending to prove a common intent of the defendant to cheat and defraud. State v. Roberts, 210 Mo. 726; State v. Wilkins, 221 Mo. 444; State v. Shout, 261 Mo. 360.

FARIS, P. J.—The defendant was convicted in the circuit court of Callaway County for violating the provisions of section 4565, Revised Statutes 1909, as amended by the Laws of 1911. [Laws 1911, p. 194.] His punishment was fixed by the verdict of a jury at imprisonment in the penitentiary for a term of two years. From a sentence in accordance with

the verdict, after the conventional motions, he has appealed.

The information is in two counts. The first count is bottomed as stated above, upon section 4565, and, caption and formal parts omitted, reads thus:

"N. T. Cave, Prosecuting Attorney within and for the body of the county of Callaway and State of Missouri, under his official oath and according to his best information, knowledge and belief, informs the court that one William Young, on the 16th day of April, 1914, at Callaway county, Missouri, feloniously, designedly and wilfully, with intent to cheat and defraud one I. L. Edwards, did falsely pretend to the said I. L. Edwards that he, William Young, had lawful money of the United States deposited to his credit in the 'Bank of Chamois,' a banking corporation duly corporated, organized and operating as such under the laws of the State of Missouri, and that said money was subject to be checked out of said bank, and that he had sufficient money deposited in said bank to purchase and pay for two mules of the value and purchase price of four hundred and seventy-five dollars, and the said William Young further falsely pretended and represented to the said I. L. Edwards that he, William Young, was the owner and operator of the largest general merchandise store in the town of Chamois, Missouri, and the said I. L. Edwards, believing the said false pretense, made as aforesaid, to be true, and being deceived thereby, was by reason thereof induced to and did then and there sell and deliver to the said William Young, two mules, the personal property of I. L. Edwards, for the purchase price of four hundred and seventy-five dollars, and the said William Young gave the said I. L. Edwards his, William Young's, personal check for the above amount drawn on the 'Bank of Chamois,' in payment for said mules and the said I. L. Edwards relying upon the statements so made by the said William Young, and believing them and each of them to be

true, then and there accepted said check in payment of the purchase price of said mules and delivered the said mules to the said William Young, and the said I. L. Edwards presented the said check for payment at the 'Bank of Chamois,' Missouri, and the payment was refused because the said William Young had no funds in said bank, and the said William Young, by means of the said false pretenses so made to the said I. L. Edwards as aforesaid, unlawfully and designedly and feloniously did obtain of and from the said I. L. Edwards the possession of the said two mules of the value of four hundred and seventy-five dollars of the moneys and property of the said I. L. Edwards with intent, him, the said I. L. Edwards, then and there to cheat and defraud of the same; Whereas in truth and in fact the said William Young did not have any money in the 'Bank of Chamois,' as he well knew and did not own a large general merchandise store in the town of Chamois, Missouri, as he well knew; against the form of the statutes in such cases made and provided and against the peace and dignity of the State."

The second count is bottomed on section 4765, as amended by the Laws of 1913. [Laws 1913, p. 222.] Since the point is made that this joinder was improper, it may be stated that a motion to quash for alleged misjoinder was filed and overruled. Thereafter a motion to require the State to elect upon which count it would go to jury was filed. This motion seems to have been overruled, but at the close of all the evidence the State elected to go to the jury on the first count, which is set out above, and thereupon dismissed as to the second count. Therefore with the alleged misjoinder, barring the technical phase of vulnerability upon the motion to quash, we need no longer trouble ourselves.

Such of the evidentiary facts as were developed by the evidence runs briefly thus: Defendant appeared at the farm of one I. L. Edwards in Callaway County on the 16th day of April, 1914, and representing him-

self as the owner of the largest mercantile establishment in the town of Chamois and as such owner to be in need of and desirous of buying two mules for the purpose of hauling freight in and around the town of Chamois and for the purpose of advertising his business by the use of a pair of finely matched mules, agreed with said Edwards to buy the mules in question for the sum of $475. At the conclusion of the trade defendant asked Edwards for a blank check, and requested Edwards, on being furnished therewith, to fill out the same on the Bank of Chamois. Defendant signed the check and then inquired of Edwards when this check would get to the bank; whereupon Edwards inquired of him why he desired to know this and asked defendant whether or not he had the money there to pay the check. Defendant replied that he always had enough money there to pay $475, but that he had another deal in mind, and thereupon put his hand in his pocket and orally offered to show Edwards a draft for $1500, which, however, Edwards did not insist upon seeing. The proof shows that Edwards relied upon the statements of defendant in both of the behalves mentioned and thereupon accepted the check and delivered the mules to defendant. But as defendant desired Edwards to send the mules to Jefferson City, the latter paid a liveryman two dollars to take them to the Callaway County end of the bridge which spans the river at Jefferson City and turned them over to defendant.

The check given to Edwards for the mules was not paid when presented, for the reason that defendant had no money in the Bank of Chamois and had not had any therein for two months or more prior to the date at which the check was given, having, as the proof shows, closed his account in the Bank of Chamois on February 12, 1914. The evidence further discloses that defendant not only did not own the biggest mercantile business in Chamois, but at the date of obtain-

ing the mules from Edwards had no store there at all. The proof shows that he had had, some few months prior, a small store in which he had a stock of second-hand clothing, but the proof is that he had closed this out some weeks before making the deal with Edwards. On this latter point in fairness, it may be said in passing, there was countervailing testimony, and the truth of it rests somewhat in the dark.

Defendant brought the mules to Jefferson City and upon reaching there began to make efforts to sell them, finally finding, in one Clem Ware, a purchaser for them on the day following the deal with Edwards at the price of $325.

The defense was (1) a denial of the alleged pretense as to the stupendous character of defendant's store at Chamois, and (2) that defendant informed Edwards at the time of giving him the check in question that he did not at that time have money enough in the Bank of Chamois to cover the check, but that he would have a sufficient sum therein to take care of the check by the time it reached the bank for payment. For this reason he says, he made inquiry of Edwards as to the time at which, in due course, this check would reach the Bank of Chamois for collection. This conversation is denied by Edwards. The question of the truth of this statement and whether defendant on the said 16th day of April, 1914, had any sort of mercantile business in the town of Chamois, form practically the only contested issues in this case. Touching other points required to be shown, there was either no contradiction or the truth thereof was conceded.

Upon the trial of the case the court gave, among others, instruction numbered one, the goodness of which is seriously questioned upon this record. This instruction is as follows:

"1. The court instructs the jury that if you find and believe from the evidence beyond a reasonable doubt that defendant William Young on or about the

16th day of April, 1914, at the county of Callaway and State of Missouri, wilfully and feloniously and with intent to cheat and defraud, did obtain from one I. L. Edwards two mules of the value of four hundred and seventy-five dollars, or of any other value, then and there being the personal property of the said I. L. Edwards, by means of a check drawn, with intent to cheat and defraud him, the said I. L. Edwards, upon the Bank of Chamois, a bank in which he, the said William Young knew he had no funds, then you must find the defendant guilty as charged in the first count of the information and assess his punishment at imprisonment in the State penitentiary for such term as you deem proper, not to exceed seven years nor less than two years."

Such other facts as may be necessary to make clear what we shall say will be set out in the opinion.

## OPINION,

We have not been furnished a brief on the part of the defendant and that filed by the State is perfunctory and regrettably does not discuss all of the questions which we find mooted and deem troublesome. We are left, therefore, to perform our statute-enjoined duty of examining the record for error without material assistance from any source.

I. It is contended that the information herein is bad. We set out in our statement the first count, being that on which defendant was convicted. Information. (Since the second count was dismissed and the State elected not to go to the jury thereon, we need in nowise concern ourselves with either its sufficiency or insufficiency.) After a careful examination and analysis of this information we are impelled to disallow this contention and rule that the information is good. It plainly and succinctly avers and sets forth:

(a) what the pretenses were (State v. Porter, 75 Mo. 171; State v. Miller, 212 Mo. 73); (b) to whom such pretenses were made (State v. Fraker, 148 Mo. 143); (c) that he, to whom the said pretenses were made, relied upon them, and acting upon such reliance was induced to and did part with his property (State v. Vorback, 66 Mo. 168; State v. Donaldson, 243 Mo. 460; State v. Feazell, 132 Mo. 176; State v. Dines, 206 Mo. 649; State v. Hubbard, 170 Mo. 346; State v. Kelly, 170 Mo. 151); (d) that by means of such pretenses said property was obtained (State v. Miller, 212 Mo. 1. c. 79); (e) that the property so obtained was owned by I. L. Edwards; (f) that its value was $475 (Sec. 4565, R. S. 1909, as amended by Laws 1911, p. 194); (g) that said pretenses were made designedly and feloniously with intent to cheat and defraud (State v. Pickett, 174 Mo. 663; State v. Martin, 226 Mo. 538); (h) that the pretenses so made were false (State v. DeLay, 93 Mo. 98; State v. Peacock, 31 Mo. 413); and (i) that defendant knew when he made them that such pretenses were false and untrue (State v. Janson, 80 Mo. 97; State v. Foley, 247 Mo. 607; State v. Shout, 263 Mo. 360; State v. Donaldson, 243 Mo. 460; State v. Roberts, 201 Mo. 702). This is all that is required so far as concerns the component elements of the offense as denounced by section 4565 of our present statutes (State v. Foley, supra; State v. Shout, supra), as amended by the Laws of 1911.

II. It is also contended by the motion to quash that there was an unwarranted joinder of counts in a single information, in this, to-wit, that the first count charges an offense forbidden by section 4565, Revised Statutes 1909 (amended, Laws 1911, p. 194), while the second count charges an offense under section 4765, Revised Statutes 1909 (amended, Laws 1913, p. 222). The legal

Misjoinder of Offenses.

test of permitted joinder is not whether the offenses charged in different counts of a single information as having been committed in different ways are, or are not, defined and denounced by different sections of the criminal code. The test is: Whether such offenses arose out of the same transaction, and are so far cognate as that an acquittal or a conviction of one would be a bar to a trial for the other. [State v. Christian, 253 Mo. l. c. 394; State v. Daubert, 42 Mo. 242.] Guided by this test a casual examination of the two counts in the light of the proven facts in the case at bar shows that this point has no merit in it; especially in view of the fact that an election to go to the jury only upon one count was actually had herein. This is so, for the reason that the second count was bottomed solely upon the alleged act of defendant in drawing and giving to said Edwards the identical check upon the Bank of Chamois, which is mentioned and described in the first count of the information.

III. It is urged in the motion for a new trial that instructions one and two are bad. We disallow the contention as to instruction two, but as to instruction one it must be sustained. This instruction is clearly drawn under the second, or dismissed count of the information, that, to-wit, which is bottomed upon section 4765 of our statutes as amended in 1913. [Laws 1913, p. 222.] Said instruction would, we apprehend, be good if this prosecution were under the latter section; but it is bad under the specific charge here.

Instructions:
No Deception.

The vice of this instruction is (the prosecution being bottomed on section 4565) that it does not require the jury to find that Edwards was in fact deceived by the false pretenses made by defendant. [State v. Keyes, 196 Mo. l. c. 145.] Neither did any other instruction in the case require such finding, al-

though the law is fairly well settled that the information must charge and well settled that the proof must show (State v. Dines, 206 Mo. 649; State v. Evers, 49 Mo. 542; State v. Bohle, 182 Mo. 1. c. 65) that he who is said to be deceived was in fact deceived, that is, that he did not part with his property with his eyes open, knowing in fact that the defendant was not a merchant in Chamois and knowing in fact that defendant had no money in the Bank of Chamois. [State v. Bohle, 182 Mo. 58.] If Edwards knew at the time the falsity of defendant's pretenses there is no crime committed under section 4565 (State v. Bohle, supra), whatever might, in such case, be the effect of defendant's acts coupled with Edward's knowledge, if he were prosecuted under section 4765. The omission to require the jury to find that Edwards relied on, and was deceived by, the false pretenses of defendant was peculiarly hurtful here; because the sole defense urged upon this phase of alleged false representation (and the other phase is not even referred to in the instructions), was that defendant gave the check to Edwards knowing, *and so informing Edwards,* that he had no funds in the Bank of Chamois, but upon the promise to Edwards that the money would be in said bank by the time the check reached there for payment. If these facts so urged in his defense by defendant had been true, it is obvious that no conviction could stand under said section 4565; for the effect of such an agreement to have the money in the bank to pay the check on a future day would be to make of the alleged pretense but a mere promise, and so remove it from the category of crimes. [Kelley's Crim. Law & Proc. 693.]

It is true that at the request of defendant an instruction was given (seemingly written by defendant's learned counsel) which deals specifically with this phase of the defense. This instruction read as follows:

"The court instructs the jury that if you believe from the evidence that at the time the check mentioned in evidence was given, the defendant told the prosecuting witness, Edwards, that the money was not then in the bank on which the check was drawn, but that it would be there by the time the check arrived *and that such promise was made in good faith,* then you will find the defendant not guilty."

If the latter instruction had been good, it might have cured the evil in instruction one here under discussion. But the instruction last above set forth was bad in this case, for that it contained the words italicised by us. In a prosecution *under section 4565* for obtaining money, goods, chattels, property or credit by false pretenses, the moment such alleged false pretenses are shown to be naked future *promises,* the prosecution inevitably and instantly fails. [State v. Evers, 49 Mo. 542; State v. Vorback, 66 Mo. 168; State v. De-Lay, 93 Mo. 98; State v. Petty, 119 Mo. 425; State v. Krouse, 171 Mo. App. 424.] So, it could make no difference here whether the defendant was or was not exercising good faith in making the promise he contends he made to Edwards. If he made this check under the circumstances he says he did, he cannot be guilty of obtaining mules under false pretenses, for either one or both reasons forecast above: (1) Edwards was not deceived (on this, the only phase of false pretenses on which the case went to jury), and (2) the alleged false pretense was but a promise by defendant of a thing to be done by him in the future.

We have carefully examined other matters complained of by defendant, but find all such to fall into either the category of things which are not harmful, or such as will not necessarily happen again upon the next trial. In passing, we may say that it was proper, as showing the intent of defendant, to allow proof by the State of other checks drawn by defendant

on this same bank, shortly before and shortly after the date of the offense here charged against him, which checks were to defendant's knowledge refused payment for lack of funds.    But in such case the jury should be informed by an appropriate instruction that proof of such other recent and similar crimes is admitted for the sole purpose of showing the intent of defendant in giving the check herein complained of (State v. Wilson, 223 Mo. 156), and as showing defendant's knowledge of the condition of his alleged bank account.

It results that for the error above discussed, this case must be reversed and remanded for a new trial. Let this be done.    All concur.