THE STATE v. MAX RICHMAN, Appellant.—148 S. W. (2d) 796.

Division Two, March 12, 1941.

*Henry J. Schmandt* for appellant.

*Roy McKittrick*, Attorney General, and *B. Richard Creech*, Assistant Attorney General, for respondent.

COOLEY, C.—Defendant below, appellant here, was convicted, on trial to a jury, of obtaining property by false pretenses, was sentenced to two years' imprisonment in the penitentiary, and has appealed. The main question and we think the decisive question presented by the appeal is whether the offense charged and proved, if any was proved, constitutes violation of Section 4095, Revised Statutes 1929, Mo. Stat. Ann., p. 2894, which we may refer to as the false pretense statute, or comes under Section 4305, Revised Statutes 1929, Mo. Stat. Ann., p. 2998. If said Section 4095 governs, the offense, if any, was a felony, the value of the property alleged to have been obtained having been more than $30. If Section 4305 governs, the offense, if any, was a misdemeanor, and prosecution therefor was barred by the one year Statute of Limitations, Section 3393, Revised Statutes 1929, Mo. Stat. Ann., p. 3079, because the prosecution herein was not instituted until more than a year (about seventeen months) after the alleged commission of the acts charged. In view of the

disposition we feel constrained to make of this case, a brief, summarized statement of the facts will suffice.

For twenty years or so defendant had been engaged in buying and selling cattle and other livestock. For a number of years the Potosi Auction Company, a copartnership (which for brevity we shall call the auction company), was engaged in selling livestock at auction. On March 12, 1938, said auction company held a sale at which defendant bid in stock amounting to $784.25, for which sum he gave the auction company his check, payable to it; drawn on the Farmers & Merchants Bank, of Eureka, Missouri. The check was presented to said bank on March 14th and payment was refused because of insufficient funds. The bank records showed that on March 12th defendant had on deposit subject to check a balance of only $27.79 and on March 14th, $23.79. It is the property bought by defendant at the sale on March 12th that he is accused of having obtained by false pretenses. Neither at the time of the sale nor prior thereto, nor at the time of giving the check was there any conversation between defendant and any member of the auction company or between defendant and the clerk of said company who acted for the company at the sale and to whom the check was delivered. The clerk testified that he wrote out the check and defendant signed it and that was all—there was "no conversation, no representations." Briefly, the only "representations" made by defendant consisted of his signing and delivering the check.

Defendant had done business with the auction company for a "long time," (at least six or eight years) and had given that company numerous checks which had always been paid. The company continued to do business with defendant for a considerable time after the occurrence here in question. A Mr. Turner, only member of the auction company who testified, said that defendant told him later he would make the check good but did not do so. [In this connection there was a subsequent payment of $100 credited to defendant's account, but whether on this particular check or not is not quite clear and is perhaps here immaterial.]

For quite a number of years prior to the occurrence here in question defendant had carried a bank account with the Farmers and Merchants Bank of Eureka and had done his banking business with and through that bank. It appears he did an extensive business and that his bank account might well be characterized as an active one. He would on many occasions buy and ship cattle to an East St. Louis Commission Company, but a draft on said commission company and check on his bank—said Farmers and Merchants Bank—and the bank would pay his checks before realizing on the drafts, although, unless the drafts were honored, the checks would overdraw defendants account. This question and answer appears in the testimony of the cashier of the bank—(a State's witness);

"Q. Isn't it a fact that the bank's arrangement with Mr. Richman was simply this,—he could go out and buy cattle, and write checks on your bank, and give drafts drawn on the commission company and you would pay the checks before you received the payments from these commission companies? A. Yes, sir.

"Q. Isn't it a fact that the Farmers and Merchants Bank paid checks many times for Mr. Max Richman, when he didn't have any money in the bank? A. We didn't have any such arrangement with him.

"Q. Isn't it a fact that the bank paid them? . A. Yes, sir, we paid drafts when they were presented."

Without further detail it may be said that whether or not there was any definite "arrangement" or agreement that the bank would pay defendant's checks before receiving the proceeds of drafts drawn by him on commission companies to which he shipped stock, the bank did on numerous occasions do so. On the occasion in question it does not very clearly appear from the State's evidence that defendant had drawn a draft on the commission company for a sum sufficient to cover the check in question, but we think it does appear, inferentially at least, that he had done so and that the reason the check was not paid was that, for some reason not disclosed, the commission company declined to honor the draft and that the bank, learning of that fact, refused payment of the check. Defendant offered to testify to what was said to him later by members of the commission company as to why they had declined to honor his drafts, but that offered testimony was rejected, and he did not know of his own knowledge why the drafts he had forwarded to the commission company had not been paid.

Section 4095, supra, provides that every person who, with intent to cheat or defraud another, shall "*designedly, by color of any false token or writing*, or by any other false pretense" obtain, (among other things), personal property, shall be punished as for feloniously stealing such property. [Emphasis ours, because of certain contentions of the State. Feloniously stealing property of $30 or more in value is a felony.]

Section 4305, supra, reads:—

"Any person who, to procure any article or thing of value, or for the payment of any past due debt or other obligation of whatsoever form or nature, or who, for any other purpose shall make or draw or utter or deliver, with intent to defraud any check, draft or order, for the payment of money, upon any bank or other depository, knowing at the time of such making, drawing, uttering or delivering, that the maker, or drawer, has not sufficient funds in, or credit with, such bank or other depository, for the payment of such check, draft, or order, in full, upon its presentation, shall be guilty of misdemeanor, and punishable by imprisonment for not more than one year, or a

fine of not more than one thousand dollars, or by both fine and imprisonment.''

The information in this case charges that the defendant ''feloniously, knowingly and designedly, with intent to cheat and defraud'' the auction company, ''did falsely and fraudulently represent and pretend and state'' to said company that he had a checking account with the Farmers and Merchants Bank sufficient to meet payment of a check of $784.25 and that said auction company believing said false representations was thereby induced to deliver to defendant the property in question. It then alleges:

''WHEREAS, in truth and in fact, he, the said Max Richman, at the time he wrote said check above described and delivered same to the members of said Potosi Auction Company, well knew that he did not have sufficient funds in said Bank to meet payment of said check and well knew that said check would not be paid when presented to said Bank for payment, and by means of the false pretenses and representations as aforesaid, so made by him, the said Max Richman, did feloniously obtain from the members of the Potosi Auction Company the property heretofore described, against the peace and dignity of the State.''

The trial court treated the information as a charge of obtaining property by false pretenses, as denounced by Section 4095, supra, and defendant was convicted under that section of the statute. However, the facts stated in the information, and particularly the facts proved were such as to bring the crime, if any crime was committed, within the provisions of Section 4305, supra. The Assistant Attorney General who presented the State's case here contended in both printed and oral argument that the check given by defendant was a ''false token'' and a ''false writing'' within the meaning of Section 4095, and that the delivery of the check, without more, constituted a representation that defendant had sufficient money on deposit subject to his check to pay it and that the bank would pay it. Stress is also laid on the word ''designedly'' in Section 4095 and it is contended, if we understand the State's argument, that by the use of that word the offense denounced by Section 4095 is distinguishable from the offense defined in Section 4305. So far as that precise point is concerned we are unable to perceive such distinction. Section 4305 makes it a crime for any person, in order to procure anything of value, to give a ''check, draft or order for the payment of money,'' etc., with intent to defraud, knowing at the time that he has not sufficient funds in, or credit with, the bank on which the check is drawn to pay the check. To constitute a crime as defined in Section 4305, the check or order must be given for the purpose of obtaining something of value, must be given with intent to defraud, and with knowledge on the part of the maker that he has not sufficient funds or credit to make the check good. Certainly, if one thus obtains property he does it ''designedly.''

Section 4095 has been on the statute books for many years. It is a general statute, covering the obtaining of property by color of any false token or writing or by any other false pretense. Section 4305 is a later statute and deals specifically with obtaining property by the giving of a "check, draft or order for the payment of money" when the drawer knowingly has not funds or credit with the bank sufficient to pay such "check, draft or order." If it should be conceded that a check drawn on a bank wherein the drawer has insufficient funds is a "false token" or "false writing" within the meaning of Section 4095,—a question we need not here determine—there can be no doubt that it comes specifically within the terms of Section 4305. The latter is in the nature of a special rather than a general statute, as between it and Section 4095, and is a later enactment. If the giving of the check, as shown in this case, would be a violation of Section 4095 then it seems clear there would be irreconcilable conflict, so far as pertains to the giving of such check, between said two sections of the statute, in which situation the special (and in this instance the later), statute must govern.

In State v. Harris, 337 Mo. 1052, 1058, 87 S. W. (2d) 1026, we said that if statutes are necessarily inconsistent that which deals with the common subject matter in a minute and particular way will prevail over one of a more general nature; and, citing authorities, we quoted the rule as stated in State ex rel. County of Buchanan v. Fulks, 296 Mo. 614, 626, 247 S. W. 129, 132, thus:

"'Where there is one statute dealing with a subject in general and comprehensive terms and another dealing with a part of the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, with a view to giving effect to a consistent legislative policy; but to the extent of any necessary repugnancy between them, the special will prevail over the general statute. Where the special statute is later, it will be regarded as an exception to, or qualification of, the prior general one; and where the general act is later, the special will be construed as remaining an exception to its terms, unless it is repealed in express words or by necessary implication.'"

To. same effect, see State ex rel. American Central Insurance Co. v. Gehner, 315 Mo. 1126, 280 S. W. 416, 417, [5]; State v. Green, 87 Mo. 583; State v. Green, 24 Mo. App. 227; State ex rel. Butler v. Foster, 187 Mo. 590, 610, 86 S. W. 245. That rule of construction, we think, is well established. Section 4305, supra, does deal specially with the giving of a check for the purpose of obtaining property with intent to defraud. It seems to us said section takes that particular offense out of the operation of Section 4095. With the wisdom of that legislation we as a court have nothing to do. That was a question for the Legislature.

It was suggested in oral argument that if a check, given in

violation of Section 4305, was for more than $30—the line of demarcation between misdemeanor and felony for stealing personal property—we should hold that even under said Section 4305 the giving of the check herein, it having been for more than $30, should be construed to be a felony. The statute makes no such provision or distinction. By its terms it applies to any ''check, draft or order'' on a bank for the payment of money, etc. In order to sustain the State's contention on this point we would have to write into the statute something —and an important ''something''—which the Legislature did not see fit to put there. This we do not feel we have authority to do. As we have said we cannot pass upon the question of the wisdom of the legislative act. We may construe it, but, absent some constitutional consideration, not here present, we may not say the Legislature should not have enacted it, nor may we, under the guise of construction, say the Legislature meant something which clearly and distinctly it did not say and clearly and distinctly refrained from saying.

Section 4305 characterizes the offense there denounced as a misdemeanor. The punishment provided is as for a misdemeanor. Prosecutions for misdemeanors must be instituted within one year from the date of the offense as we have shown, and this prosecution was not begun within that time. While we have grave doubt whether, under the facts shown, defendant was guilty of any offense, we need not further discuss that question because in our opinion the offense, if any, falls under Section 4305, supra, and prosecution therefor is barred by the one year Statute of Limitations. It is our conclusion that the judgment of the circuit court should be reversed and the defendant discharged. It is so ordered. *Westhues* and *Bohling*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.