STATE OF MISSOURI, Respondent, v. FRANK GRIGGS, JR., Appellant, No. 42199—236 S. W. (2d) 588.

Division One, February 12, 1951.

*Frieze & Crandall* for appellant.

760

*J. E. Taylor*, Attorney General, and *Arvid Owsley*, Assistant Attorney General, for respondent.

[589] VAN OSDOL, C.—Defendant was convicted of obtaining money and property, with the intent to cheat and defraud, by means of a check drawn on a bank in which he knew he had no funds. Section 4694 R. S. 1939, Mo. R. S. A. § 4694, Section 561.450 R. S. 1949. His punishment was assessed at imprisonment in the state penitentiary for a term of two years. He has appealed from the ensuing judgment.

Upon this appeal defendant-appellant assigns errors of the trial court in overruling defendant's motion to quash the information; in overruling defendant's request for a directed verdict of acquittal; and in the giving and refusal of instructions.

There was substantial evidence introduced tending to show that defendant, Frank Griggs, Jr., on September 24, 1949, appeared at the store of Gene Taylor and Fred Atkinson, who were partners doing business as White Way Feed and Oil Company at Joplin. Defendant bought fifty pounds of egg mash worth $1.95 from a clerk at the store. Defendant produced a check dated September 24th for $20 signed by himself payable to "Cash" and drawn on the First National Bank of Joplin. Defendant asked the clerk, DeWeese, "if we could cash the check." DeWeese took the check to the partner-employer, Atkinson, who thought the "signature looked familiar and also the man looked familiar," so Atkinson told the clerk to go ahead and cash the check. Defendant made no representation (verbal or otherwise, aside from or extrinsic to the check) that he had a bank account, or that the check was good and would be paid upon presentation at the bank. Defendant was given $18.05 in cash, and defendant told DeWeese that some of defendant's relatives would later come by and get the egg mash. Defendant got into a truck and drove away. He was apprehended later the same day by the city police officers. Defendant, who lived in

Oklahoma, was then in a truck "headed south" on the way out of town. On that day, September 24th, defendant had no account and no funds on deposit with the First National Bank of Joplin. When arrested, defendant said that he had given a "bad check"; that he had no money in the bank; and that he "didn't have" a bank account.

In our opinion the evidence we have summarized is sufficient to sustain a conviction for violation of Section 561.450, supra, which section provides that "Every person who, with the intent to cheat and defraud, shall obtain - - - from any other person, or persons, any money, property or valuable thing whatever - - - by means of a check drawn, with intent to cheat and defraud, on a bank in which the drawer of the checks knows he has no funds - - - shall be deemed guilty of a felony - - -."

The information was sufficient in substantially following the quoted language of the Section 561.450, supra, by charging that "Frank Griggs, Jr., did then and there with intent to cheat and defraud, unlawfully and feloniously obtain from Gene Taylor and Fred Atkinson, d/b/a White Way Feed and Oil Company, merchandise of the value of Two ($2.00) Dollars, and Eighteen ($18.00) Dollars in currency of the United States of America, of the value of Eighteen ($18.00) Dollars, by use of and by means of a check given on the First National Bank of Joplin, Joplin, Missouri, a banking institution duly organized and incorporated under the Laws of the United States of America, in the amount of Twenty ($20.00) Dollars, in which said bank the said Frank Griggs, Jr., at the time of the drawing and uttering said check had no account, all of which he, the said Frank Griggs, Jr., well knew - - -." However, the information additionally charged that "and the said Frank Griggs, Jr., did [590] then and there, with intent to cheat and defraud, feloniously represent and pretend that he had an account in said bank, and that said check would be paid, and the said Gene Taylor and Fred Atkinson - - - believing and relying upon said representations and being deceived thereby did give to the said Frank Griggs, Jr., the said merchandise (and money) - - -."

The trial court by its principal Instruction No. 1 advised the jury as follows,

"The Court instructs the jury that if you find and believe from the evidence in this case beyond a reasonable doubt that the defendant, Frank Griggs, Jr., on or about the 24th day of September, 1949, did then and there feloniously draw, pass, utter and publish as true a certain false and bogus check drawn on the First National Bank of Joplin, Missouri, a banking institution duly organized and incorporated under the laws of the United States of America, in the amount of $20.00, in which

said bank the said Frank Griggs, Jr., at the time of drawing, passing, uttering and publishing said check had no account, and delivered the same to Gene Taylor and Fred Atkinson, doing business as the White Way Feed & Oil Company, in exchange for merchandise and money, then and there knowing the said check to be falsely made, forged and counterfeited, *and if you further find* from the preponderance of the greater weight of the evidence and beyond a reasonable doubt *that the said Frank Griggs, Jr., did then and there,* with the intent to cheat and defraud, feloniously *represent and pretend that he had an account in said bank and that said check would be paid,* and the said Gene Taylor and Fred Atkinson believing and relying upon said representations, if any, and being deceived thereby, did give the said Frank Griggs, Jr., said merchandise of the value of $1.95 and $18.05 in money of the United States of America, then you will find the defendant guilty of making and uttering a check, as charged in the information, and assess his punishment at imprisonment in the state penitentiary for a term of not less than two years nor more than seven years; and unless you so find the facts to be, you will find the defendant not guilty.'' (Our italics.)

The trial court refused defendant's proffered (converse) Instructions D-5 and D-7, which refused instructions hypothesized substantially the negative of the principal Instruction No. 1 including the language which we have italicized.

As we have seen, there was no evidence tending to show any representation or pretense on the part of the defendant other than the drawing and uttering of the check itself; consequently, there was no evidence (other than the evidence of the drawing and uttering of the check itself) tending to substantiate the italicized language of the principal Instruction No. 1, and obviously the giving of defendant's converse Instructions D-5 and D-7 would have been tantamount to directing the defendant's acquittal.

While defendant would have been nonetheless guilty had he made express or verbal representations (at the time he drew and uttered the check) that he had an account in the bank and that the check would be paid upon presentation, yet merely giving the check was, in effect, a representation that the check was good and would be paid upon presentation; and obtention of money or property by the mere means of a check given, with intent to cheat or defraud, the drawer knowing he has no funds in the bank, is, and has been since 1913, a fraud specifically and expressly denounced by Section 561.450, supra. Laws of Missouri, 1913, p. 222.

■ It is pertinent to examine the provisions of sections of our statutes defining different and independent crimes although having some elements in common with the crime defined in Section 561.450.

See Section 4487 R. S. 1939, Mo. R. S. A. § 4487, Section 561.370 R. S. 1949, "Obtaining money, goods, by false pretenses," punishable as for feloniously stealing; Section 4572 R. S. 1939, Mo. R. S. A. § 4572, Section 561.090 R. S. 1949, "Uttering forged obligation or check," punishable by imprisonment not less than two nor more than ten years; Section 4695 R. S. 1939, Mo. R. S. A. § 4695, Section [591] 561.460 R. S. 1949, "Checks or drafts drawn when funds insufficient," a misdemeanor, punishable by imprisonment for not more than one year, or by a fine, or by both fine and imprisonment: It will be observed that these statutes define several crimes having a common element of fraud or deception; but the statutes apply to different means by which the defined crimes are consummated. The varying punishments provided may be said to reflect the legislative contemplation of the varying seriousness of the defined crimes according to the varying means by which and the varying circumstances in which the defined crimes are perpetrated. The felony as perpetrated by the means as defined in Section 561.450 is apparently considered more serious than the crime defined in Section 561.370, and much more grave than the misdemeanor defined in Section 561.460, but of somewhat less gravity than the felony defined in Section 561.090.

In State v. Richman, 347 Mo. 595, 148 S. W. 2d 796, it was pointed out that the later and special Section 561.460, supra, rather than the priorly enacted Section 561.370, supra, is applicable to one who has procured anything of value by giving a check, with intent to defraud, when the drawer knowingly has insufficient funds on deposit in or credit with the bank for the payment of the check.

In 1913, Section 4765 R. S. 1909 was repealed and a new section (now Section 561.450, supra) was enacted. Additional clauses were included in the new section specifically naming additional tricks, cheats or frauds as being within the purview of the statute, as follows, "by means of a check drawn, with intent to cheat and defraud, on a bank in which the drawer of the check knows he has no funds, or by means, or by use, of any corporation stock or bonds." See again Laws of Missouri, 1913, p. 222. It seems clear to us that the amendment by repeal and re-enactment to include the new clause, "or by means of a check drawn, with intent to cheat and defraud, on a bank in which the drawer of the check knows he has no funds," indicates the legislature intended Section 561.450, supra (not the priorly existing "false pretense" statute, Section 561.370, supra) to be applicable to the cheat and fraud charged in the instant case. State v. Richman, supra. Consequently, this is not a prosecution for the crime of obtaining money or property by false pretenses under Section 561.370, supra, the essential averments in charging which crime are stated in State v. Loesch, Mo. Sup., 180 S. W. 875. However, this court has heretofore failed

to make any differentiation, in some cases, as to the averments necessary in charging violations of the two statutes, Sections 561.370 and 561.450, supra. See State v. Workman, Mo. Sup., 199 S. W. 131; and State v. Burton, Mo. Sup., 213 S. W. 424. Such failure on the part of this court apparently lies at the foundation of the confusion in the averments of the information, and in the hypotheses of the given Instruction No. 1 in the instant case.

In the case of State v. Wilson, 223 Mo. 156, 122 S. W. 701, this court said it was the purpose of Section 561.450 to provide for a class of false representations not included in some other section dealing with the subject of ordinary false representations. It was intended to reach a class of offenders known as ''confidence men'' who obtained money of their victims by means of some trick or representation designed to deceive. In State v. Block, 333 Mo. 127, 62 S. W. 2d 428, and State v. Herman, Mo. Sup., 162 S. W. 2d 873, it was said there should be some confidential relation between the intended victim and the accused in the obtaining or attempting to obtain money or property from the intended victim. In this connection this court meant some relation, or some representation, trick or device which would inspire the confidence of the victim and thus induce him to act. It would seem the ''confidential relation'' may be one arising out of an ordinary business transaction, such as the purchase of property and the giving of a check therefor. The mere fact that a business transaction is utilized incidentally to the scheme or trick or cheat should not make the fraud the less criminal. It is not too much to say that the confidence which is necessarily reposed [592] in the genuineness and value of commercial paper in the transactions of the modern business world, and the consequent facility with which checks may be used as a means to perpetrate frauds must have prompted the legislature in its amendment of 1913.

As stated, the evidence supports the charge that defendant obtained property and money by giving a check, with intent to cheat and defraud, knowing he had no funds in the bank on which the check was drawn; but, as further stated, the evidence does not support the charge of the information and the hypothesis of Instruction No. 1 that defendant made any representation or pretense (other than the drawing and uttering of the check) that the check was good. There was a duplicitous averment in the single count of the information by the commingling of facts as if charging a crime under Section 561.370, supra, and facts essentially the elements of a violation of Section 561.450, supra, in so far as the latter section is applicable to the shown facts in the instant case.

It is also apparent that the principal Instruction No. 1 was prejudicially erroneous in failing to require a finding of an essential element of the crime charged, that is, that defendant

*knew he had no funds* in the bank on which the check was drawn (see again Section 561.450, supra), and the instruction erroneously hypothesized an essential element of still another and independent crime denounced by another statute by requiring a finding that defendant drew, passed, uttered and published the check "then and there *knowing the said check to be falsely made, forged and counterfeited.*" (See Section 561.090, supra.) It is held that a principal or main instruction authorizing a conviction should require the jury to find every fact necessary to constitute the essential elements of the crime charged. State v. Price, 348 Mo. 361, 153 S. W. 2d 353; State v. Stewart, 329 Mo. 265, 44 S. W. 2d 100.

The judgment should be reversed, and the cause should be remanded.

It is so ordered. *Lozier* and *Aschemeyer, CC.*, concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.