STATE of Missouri, Respondent,

v.

David Alexander BLAKE, Appellant.

No. 46579.

Supreme Court of Missouri,
Division No. 2.

Feb. 10, 1958.

W. H. Howery, Kansas City, for appellant.

John M. Dalton, Atty. Gen., Russell S. Noblet, Asst. Atty. Gen., for respondent.

BARRETT, Commissioner.

The appellant, David Alexander Blake, has been found guilty of an offense in connection with a check and sentenced to two years' imprisonment. The information upon which he was tried charged that Blake and Lenora Jones "with intent to cheat and defraud" the C. & O. Distributing Company obtained merchandise of the approximate value of $47 and money in the sum of $79 by means of a $125 check drawn by the appellant on the Mission State Bank of Mission, Kansas, a bank in which the appellant knew he had no funds.

The appellant urges that he is entitled to a new trial for the reasons that the court erred in giving instructions two and seven in that they hypothesize a finding of guilt under V.A.M.S. § 561.450, "a fraudulent check," whereas the instructions additionally permit and require a finding of "guilty of obtaining money and property by false pretenses," an offense under V.A.M.S. § 561.370. In this connection it is urged that the form of the verdict given the jury and returned by them was not responsive to the issues and is fatally defective in that it finds the appellant "guilty of obtaining money and property by false pretenses (check) as charged in the information." And finally it is urged that there is no evidence that the appellant "knew he had no funds" at the time the check was drawn, that such knowledge cannot be inferred from the evidence, and, therefore, it is said that the evidence is insufficient to sustain a conviction of the offense charged in the information.

The facts were that on April 30, 1956, *David A. Blake* and Sibby H. Taylor opened a joint checking account in the Mission State Bank with a deposit of $525. The account was "closed" on May 26, 1956, when Mrs. Taylor's check in the sum of $5.36 was paid. In the meanwhile Mrs. Taylor deposited $70 in the account, thus there were total deposits during the existence of the account of $595. On May 5th her check on the account in the sum of $46 was honored, on May 10th she cashed a check for $20 and on May 17th her check to the Gas Service Station in the sum of $6.12 was honored and, as stated, on May 26th she closed the account by cashing a check for $5.36. Thus known total withdrawals on checks drawn by Sibby were $77.48. The bank was unable to say from its photographic records whether the appellant or Mrs. Taylor had drawn a check for $40 on May 16th. But the appellant made these withdrawals by checks signed by him: May 5th, $20, May 9th, $300, $100 and $25 and also on May 9th a check to Robert Close in the sum of $32.52, drawn by the appellant, was paid. Thus during the short existence of the account the appellant drew checks against it in the sum of $477.52 which, including the $40 check leaves $117.52 checked out by Mrs. Taylor—a sum or balance insufficient to pay the $125 check involved here. In point of fact May 8th was the last date on which there were sufficient funds in the account to have paid a check for $125.

The circumstances in which the check was negotiated and the appellant arrested were these: On May 28, 1956, Blake and Elizabeth Lenora Jones, representing themselves to be Mr. and Mrs. Blake, appeared at the C. & O. Distributing Company, wholesalers of novelties to supermarkets, leaving the impression that they operated a store. The appellant and Lenora selected some sun glasses and jewelry sets and

as they were looking at other objects the appellant suddenly remembered a previous appointment and "he turned to the lady I thought was his wife and said that he had to keep his appointment and for her to wind up the transaction, to buy something else if she thought they could use it" and he handed her a check and left. Lenora selected another item or so, all of the merchandise totaling forty-six dollars and some odd cents, and presented the $125 check in payment and received seventy-nine dollars and some cents in change. The clerk asked Lenora for "their home phone number" which she noted on the check, "Kendall 2–5675" ; one of the owners asked for their address and it was given as "1601 West 39th Avenue, Kansas City, Kansas." The clerk immediately took the check to the Mission State Bank and payment was refused because there was "no account" in the name of "D. A. Blake, Jr." There was no account in the name of "David Alexander Blake" and the account in the joint names of "David Blake and Sibby H. Taylor" had been closed, as indicated, on May 26th. Investigation by the clerk and the owners of C. & O. Distributing Company revealed that there was no such phone number as "Kendall 2–5675." A letter addressed to "1601 West 39th Avenue" was returned "no such address" and one of the owners of C. & O. was unable to find the address or the appellant and Lenora living in the neighborhood. On June 6, 1956, two detectives arrested the appellant and Lenora at 8:30 in the morning in an apartment at 703 East Tenth Street. The detectives found a quantity of merchandise, identified as coming from the stock of C. & O. Distributing Company. One of the detectives said that when he made the arrest the appellant said: "He told us, as I recall, that this merchandise was from the C. & O. Distributing Company and that he had written it with bad checks." The clerk in the wholesale house identified the appellant as the person with Lenora and as the one who presented the check and a

detective identified him as the person arrested on June 6th.

■ These circumstances present a situation entirely different from the situations encountered in State v. Scott, Mo., 230 S.W.2d 764, and State v. Robinson, Mo., 255 S.W.2d 811. In the Scott case Scott owed Silvers in King City, Missouri, $1.50 and when asked to cash a check for $4, drawn on the First State Bank of Leoti, Kansas, gave the appellant Scott $2.50 in cash, Scott telling Silvers at the time that he had $18 in the bank. The check was returned with a notation on it "No Acct" but upon the trial of the case there was no proof as to who placed the notation on the check, when it was placed there or why and it was held that there was a failure to prove that the defendant had no funds in the bank or that he knew he had no funds in the bank. In this case it was plainly established that the appellant, on May 28, 1956, had no funds and no account in the Mission State Bank and that payment of the check for $125 was refused for that reason. In State v. Robinson, supra, the appellant gave a $2,000 check on "Leadwood Motors" in which he was a partner. Twenty-seven days later payment of the check was refused for the reason that the appellant did not have an individual account. Leadwood Motors did have an account and so it was held that there was a failure of proof even though the amount of the Leadwood Motors account did not appear. In this case Sibby and the appellant had once had an account but it had been closed on May 26th and there was no account of any kind, insufficient or otherwise, upon which the appellant could draw a check. The circumstance that he had drawn checks in the sum of $477.52, the circumstances in which the check in question was presented and the fact, when he was arrested, that he said he had obtained the merchandise and money with "bad checks" is sufficient to support the inference and finding that he "knew he had no funds" in the Mission State

Bank. State v. Griggs, 361 Mo. 758, 236 S.W.2d 588.

■ As to the instructions and the verdict it was of course improper to include the phrase "guilty of obtaining money and property by false pretenses (check)," but it does not necessarily follow that the inclusion of the phrase was so unfairly prejudicial as to demand the granting of a new trial. In the first place State v. Griggs, supra, in so far as it held, in a prosecution for a no funds check under V.A.M.S. § 561.450, that an instruction hypothesizing a bogus check and including a further finding of "represent and pretend that he had an account in said bank and that said check would be paid" was duplicative and therefore prejudicially erroneous has been overruled by State v. Hartman, 364 Mo. 1109, 1115–1116, 273 S.W.2d 198, 203. The Hartman case establishes that V.A.M.S., § 561.450 creates and defines one offense, "intent to cheat and defraud," which may be committed in several different ways. As to the verdict, the appellant has overlooked the fact that State v. Saussele, Mo., 265 S.W.2d 290, overruled a list of cases dealing with special verdicts, and held, even though the verdict did not include the phrase "as charged in the information," that the verdict was not a special verdict, was sufficiently definite and certain, and was responsive to the issues. State v. Bird, Mo., 242 S.W.2d 576, was not included in the list of specifically overruled cases in State v. Saussele, and it is possible that this case is distinguishable from the Bird case in that the verdict in this case employs and includes the phrase "as charged in the information." While the verdict here says in addition "obtaining money and property by false pretenses (check)" it nevertheless does not purport to set out and require a finding of the essential elements of the offense and so the quoted language was superfluous and may be regarded as surplusage. State v. Thursby, Mo., 245 S.W.2d 859, 862–863; State v. Falco, 330 Mo. 982, 51 S.W.2d 1030; State v. Wakefield, 73 Mo. 549, 553.

■ What we have said with respect to the verdict may be sufficient to dispose of the appellant's objections to the two instructions and their concluding with the phrase "then you will find the defendant guilty of obtaining money and property by false pretenses." Certain it is that the case is not comparable to State v. Young, 266 Mo. 723, 183 S.W. 305, where the state's principal instruction hypothesized a finding of guilt under V.A.M.S. § 561.450, a count which had been dismissed, instead of under V.A.M.S., § 561.370, false pretenses, a count which had not been dismissed and upon which the appellant was tried. As it was with the verdict the quoted language in the instructions was immaterial and surplusage and the jury's verdict finding the appellant guilty "as charged" demonstrates that the jury was not confused or misled by the instructions even though the language be broader than the charge. State v. Bunyard, 253 Mo. 347, 161 S.W. 756; State v. Futrell, 329 Mo. 961, 46 S.W.2d 588.

The appellant has not demonstrated that he is entitled to a new trial for the reasons assigned; the transcript shows compliance with all matters necessary to be considered by this court "upon the record before them" (V.A.M.S. § 547.270), and accordingly the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

STORCKMAN, P. J., EAGER, J., and HUNTER, Special Judge, concur.

LEEDY, J., not sitting.