**STATE of Missouri, Respondent,**

v.

**Mishick Junior SMITH, Appellant.**

No. 47058.

Supreme Court of Missouri,
Division No. 2.

June 8, 1959.

Byron O. Dye, for appellant.

John M. Dalton, Atty. Gen., Paul N. Chitwood, Asst. Atty. Gen., for respondent.

BOHLING, Commissioner.

Mishick J. Smith appeals from a judgment imposing a sentence of three years' imprisonment for attempting to obtain money from Mrs. Mae Rhodus by use of a trick, deception and fraudulent representations and pretenses. Section 561.450 RSMo 1949, V.A.M.S., provides: "Every person who, with intent to cheat and defraud, shall obtain or attempt to obtain, from any other person * * * any money, property or valuable thing whatever by means or by use of any trick or deception, or false and fraudulent representation, or statement or pretense * * * shall be deemed guilty of a felony" and subject to imprisonment for a term not exceeding seven years. The main complaints in defendant's motion for new trial (he filed no brief) are that the State failed to make a submissible case and that the State's principal instruction is erroneous for stated reasons.

We make the following statement from the facts favorable to the State's case. State v. Green, Mo., 305 S.W.2d 863, 870 [10, 11].

Defendant was engaged in sanitation work. Buddy Harris, a boy about 16 years of age, stayed at defendant's in Leavenworth, Kansas, and had been working for him several months.

Mrs. Mae Rhodus, the prosecuting witness, was 83 years old and lived alone in Nashua, Clay County, Missouri.

On December 18, 1957, defendant and Harris were in Nashua soliciting sanitation work. About 11:30 a. m. they saw an automobile stop in front of a house, and an elderly lady, who they later learned was Mrs. Rhodus, get out. They drove around the block and waited until the automobile was driven away. Defendant then went to Mrs. Rhodus' door, and informed her they were cleaning septic tanks and toilets and asked if she had any work for them to do. She answered that she did not.

The electric fuse box, meter and wires were on the outside walls at the front of Mrs. Rhodus' cottage. Mrs. Rhodus testified that as defendant was about to turn away he looked up and said "Your house is in danger of burning down anytime. I saw fire flying from those wires there, there's trouble." Mrs. Rhodus did not see any sparks. She, however, did not know anything about electrical work, had heard of houses burning because of faulty electric wiring, and relied on defendant's statements. The thought of her house burning caused her to become "frightened." Defendant stated he learned how to do electrical work while in the Army and asked for a ladder. A ladder was borrowed and defendant used it to examine some of the electrical equipment outside the house. Defendant and Harris came into the house following this examination. Defendant took the plate off a wall outlet in the living

room, examined the outlet, said it was faulty, and replaced the plate. A conversation followed. Defendant told Mrs. Rhodus he could do the work for her and make it safe. He said he would have to get some material and left. Harris, the boy, remained in the house. Defendant returned in about 20 minutes and proceeded to work outside the house. Mrs. Rhodus remained in the house with Harris and did not watch defendant work.

Defendant and Harris were at Mrs. Rhodus' approximately two to two and a half hours. When defendant finished, he came into the house and Mrs. Rhodus asked him how much she owed him. The officer who arrested defendant testified defendant stated he told Mrs. Rhodus his charges were $51.00 for material and $7.40 for labor, a total of $58.40. When the officer brought defendant to Mrs. Rhodus' home and defendant told her he was in trouble, Mrs. Rhodus answered that he should be in trouble, that he had told her he put in fifty odd dollars worth of material and his charge was seven or eight dollars for the labor in putting the material in. She intended to pay for the work and thought it best not to argue with the men over the price. She inquired as to whom she should make her check. Upon being told, she wrote a check for $58.40, payable to Buddy Harris. She then asked for a receipt and was given a receipt signed by Buddy Harris. Harris asked where he might cash the check and Mrs. Rhodus directed him to a nearby grocery store. Defendant remained with Mrs. Rhodus. The people at the store told Harris they did not have enough money to cash the check. When Harris returned, defendant and he left in the truck.

A daughter of Mrs. Rhodus worked at the bank on which the check was drawn. After the men left, Mrs. Rhodus thought about the transaction, telephoned her daughter, told her what had happened, and stopped payment on the check. About twenty minutes later Harris presented the check at the bank and learned that payment had been stopped.

Defendant and Harris, while on their way to Leavenworth, were arrested by State Patrolman Frank Maudlin at 3:20 p. m. December 18, 1957. Harris delivered Mrs. Rhodus' check to the officer. Defendant at first informed the officer that he had put in a large fuse box, put in seven or eight feet of heavy three-quarter inch wiring to replace wire which was bad and had bare spots, put in a wall plug inside the house, and taped several bare spots on the outside wires; that he had thrown the old fuse box and wire at the side of the house; that he would go to Mrs. Rhodus' and show them what he had done, and that he did not carry electrical equipment but just happened to have what Mrs. Rhodus needed in his truck and had used all the equipment he had.

On the way to Mrs. Rhodus' defendant told the officers he would tell the truth and when he arrived at Mrs. Rhodus', in accordance with his new statement, he pointed out a fuse he had placed in the small fuse receptacle on the porch, three places where he had taped wires outside the house (two wire connections and tape around two wires and a supporting cable to keep the wires from sagging), and where he had taken the cover off a wall outlet inside the house, tightened the screw and replaced the cover.

Defendant told the officer he estimated the value of the fuse at 10 cents and of the tape he used at 30 to 35 cents, a total of 40 to 45 cents for the material used at Mrs. Rhodus'.

Asked why he did not see Mrs. Rhodus about stopping payment on the check, defendant stated he decided to just let it go, and, although he had not realized it at the time, he knew now he had probably cheated her.

Mrs. Rhodus had had no trouble with her electric service. There was testimony that defendant taped two factory connec-

tion wires that did not require taping, and that defendant did not know the difference between a 440 volt and a 110 volt electric line.

Defendant testified he fixed the charge and, if the check were paid, would receive part and probably most of the money.

It was also shown that defendant had previously charged "another real elderly lady" $158 for coating a roof, raking a yard, and doing some minor work, and later the money had been returned.

■ Defendant, in his motion for new trial, contends the State failed to make a submissible case:

First, because there was no proof of a confidential relationship between Mae Rhodus and defendant. In State v. Griggs, 361 Mo. 758, 236 S.W.2d 588, 591 [4], it is pointed out, after citing cases referring to a confidential relation, that the confidential relation may be one arising out of an ordinary business transaction. Defendant's testimony that as he was leaving, Mrs. Rhodus put her arms around him, thanked him, and wished him a Merry Christmas shows that this 83 year old lady placed confidence in defendant.

Second, because there was no evidence that defendant intended to cheat and defraud Mrs. Rhodus. The jury was privileged to consider all the representations made by defendant to Mrs. Rhodus with respect to the unsafe condition of the electric wires and system of her residence, the danger of her house burning, his ability to make it safe, the material he furnished, the work he did, and his charges therefor (State v. Loesch, Mo., 180 S.W. 875, 881 [22]; State v. Weber, Mo., 298 S.W.2d 403, 407[8]; 35 C.J.S. False Pretenses § 11, p. 650); and from the testimony could readily find that defendant intended to cheat and defraud her. Defendant stated he had probably cheated her.

Third, because Mrs. Rhodus did not avail herself of the means at hand to de-

termine the truth or falsity of defendant's representations. A jury could find that defendant's representations were calculated in the attendant circumstances to deceive a woman of Mrs. Rhodus' age. In State v. Starr, 244 Mo. 161, 172, 148 S.W. 862, 864[1], Ferriss, J., said: "One who deliberately imposes upon another should not be heard to say that his victim was over-credulous or negligent in believing what he was told. The law measures the responsibility of a defendant in such case, not by what would impose upon a man of acumen, or upon one of ordinary ability, but by what was calculated to impose upon the victim under all the circumstances of the case." See State v. Donaldson, 243 Mo. 460, 476(3), 148 S.W. 79, 84[7]; State v. Neal, 350 Mo. 1002, 169 S.W.2d 686[4]; 35 C.J.S. False Pretenses § 15, p. 652; 22 Am.Jur. 460, § 27

Fourth, because defendant did not actually obtain or receive any property over which he could exercise dominion inconsistent with the right of Mrs. Rhodus. Section 561.450 makes it a felony, punishable by imprisonment not to exceed seven years, for one to "obtain or attempt to obtain" from another person any money by any of the acts prohibited therein. The gravamen of the instant charge is that defendant "did attempt to obtain money" from Mrs. Rhodus through acts prohibited by said section; and it was not necessary that defendant actually obtain the money under the provisions of § 561.450.

■ Defendant contends that several factual issues submitted in the State's principal instruction were not sustained by "the weight of the evidence"; that is, whether the evidence favorable to the State, with the reasonable inferences therefrom, constituted substantial evidence, "evidence from which the triers of the fact reasonably could find the issue in harmony therewith." State v. Gregory, 339 Mo. 133, 96 S.W.2d 47, 51[3, 4]; State v. Whitaker, Mo., 275 S.W.2d 316, 319[10, 11].

Bearing on this issue is the principle of law that where an information charges several false pretenses, evidence of one of the false pretenses constituting in law an offense will support a conviction. " 'There need be only one false pretense, and though several such pretenses are set out in an indictment, yet if any one of them is proved, being such as truly amounts in law to a false pretense, the indictment is sustained.' " State v. Vorback, 66 Mo. 168, 172; State v. Keyes, 196 Mo. 136, 93 S.W. 801[4], 809, 6 L.R.A.,N.S., 369; State v. Montgomery, Mo., 116 S.W.2d 72, 74[7].

The substance of the false representations charged and submitted in the instruction in the conjunctive were that defendant represented to Mrs. Rhodus that the electrical wires and system of her residence were defective; that her house was in danger of burning down unless something was done about it, and that he had furnished and attached parts and material of a value in excess of $50 in performing the work he did.

There can be no valid contention regarding the sufficiency of the proof of defendant falsely representing that the value of the parts and material he used in performing the work exceeded $50, whereas, in fact, the value was less than one dollar. In this connection we mention defendant's complaints that there was no testimony by Mrs. Rhodus that defendant represented he had furnished parts and material of a value in excess of $50 and that the "instruction failed to state that the value of the parts, material and labor was a sum of $58.40." The first ignores Mrs. Rhodus' statement to defendant, when defendant was brought to her home on the evening of the occurrence, that he, defendant, had told her he put in fifty odd dollars worth of material and that his charge for labor was seven or eight dollars. The officer testified defendant stated he told Mrs. Rhodus his charges were $51 for material and $7.40 for labor. With regard to the other, there

was no charge of a false representation with respect to defendant's charge for his labor; and we find no prejudicial error in the failure of the instruction to state "that the value of the parts, material and labor was a sum of $58.40."

We are also of the opinion the jury could find from the testimony of record that Mrs. Rhodus, as she testified, relied upon defendant's representations that he saw fire flying from the electric wires; that the electrical system of her residence was defective; that the defendant's statements with respect thereto were false, and were made with the intent of deceiving a woman of Mrs. Rhodus' age and did deceive her. The record does not sustain defendant's assertion that Mrs. Rhodus testified she did not believe defendant's statements to be true and knew them to be false.

■ Defendant complains in general terms of the prosecuting attorney's argument. The record discloses that defendant interposed no objection to any argument by the State's attorney. He may not now complain. State v. Morris, Mo., 248 S.W. 2d 847[7, 9]; State v. Farris, Mo., 243 S. W.2d 983[10].

■ Defendant's last complaint, so far as essential to an understanding of the issue, is that "the court erred in not giving an instruction that if the jury found and believed from the evidence beyond a reasonable doubt that if defendant was expressing an opinion" the defendant would not be guilty as charged. We think the contention without merit for several reasons. We have hereinbefore stated the representations upon which the State relied and submitted. These representations were intended and calculated by defendant to be understood by Mrs. Rhodus as statements of fact. What has been said with respect to fraudulent promissory representations is pertinent to any expression of opinion here involved. We stated in State

v. Neal, 350 Mo. 1002, 169 S.W.2d 686, 696[15]: "As pointed out at the beginning of this opinion, it is incorrect to say unqualifiedly that the jury cannot convict a defendant on fraudulent promissory representations—when they are mingled with fraudulent representations of past or present facts. For the jury may consider and rely on the representations as a whole. The question is fully treated in State v. Wren, 333 Mo. [575] loc. cit. 578(1), 62 S.W.2d [853] loc. cit. 854, 855(1, 2). In such circumstances we think the court is not bound to instruct that the jury cannot convict on promissory representations, or even on such representations *alone*. It would be necessary for defendant to request an instruction drawing the proper distinction." State v. Weber, Mo., 298 S.W.2d 403[8]. Such an instruction could well single out part of the evidence for improper comment. State v. Smith, Mo., 252 S.W. 662, 666[12]. The proposed subject matter was not a part of the law of the case under the State's submission and defendant makes no such point. Defendant did not offer or request such an instruction or object to the failure of the court to instruct upon any subject. We find no error. State v. Martin, 364 Mo. 258, 260 S.W.2d 536, 547[14]; State v. Francies, Mo., 295 S.W.2d 8, 15[24, 25].

Defendant's motion for judgment of acquittal was properly overruled. The charge was under § 561.450. The jury found defendant guilty as charged. The formal parts of the record appear sufficient and in proper form.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.