STATE of Missouri (Plaintiff), Respondent,

v.

Herb KAUFMAN (Defendant), Appellant.

No. 29779.

St. Louis Court of Appeals.

Missouri.

Dec. 19, 1957.

Cecil Block, St. Louis, for appellant.

Paul E. Williams, Bowling Green, for respondent.

RUDDY, Presiding Judge.

■ Defendant was found guilty by the trial court of making and delivering, with intent to defraud Chester E. Phillips of articles or things of value, a check to the said Chester E. Phillips in the sum of $2,000, when he (defendant) knew at the time of making and delivering said check that he did not have sufficient funds in or credit with the bank on which said check was drawn. Punishment was assessed by the court at confinement in the Pike County Jail for a period of three months. Defendant has appealed. He has filed no brief. In the absence of a brief from the defendant, we will consider the formal parts of the record (Supreme Court Rule 28.02, 42 V.A.M.S.). In addition thereto, we will consider such assignments of defendant's motion for new trial as sufficiently comply with Supreme Court Rule 27.20, 42 V.A.M.S. State v. Drake, Mo., 298 S.W.2d 374; State v. Poucher, Mo. App., 303 S.W.2d 197.

The trial of this case was without a jury, the defendant having filed a written waiver of trial by jury, with the assent of the court, pursuant to Supreme Court Rule 26.01, 42 V.A.M.S.

■ The information follows the wording of the statute and alleges all the facts necessary to bring the defendant within the provisions of § 561.460 (all statutory references are to RSMo and V.A.M.S.). The effect of this statute is to make it a crime for anyone who has procured any

article or thing of value to make, draw, utter or deliver a check, with intent to defraud, knowing at the time that he did not have sufficient funds on deposit, or credit with the bank on which the check was drawn.

The reviewable assignments contained in defendant's motion for new trial require a statement of the facts. Chester E. Phillips lived on a farm near Louisiana, Missouri, and was employed as a welder at the Hercules Powder Company. Phillips sold the defendant some scrap iron which was loaded on freight cars and shipped to a destination assigned by defendant. Some of the cars were loaded and shipped in December 1955 and some in early January 1956. Subsequently, a controversy arose between the parties about the quality of some of the scrap iron. This controversy was settled in a discussion that took place in the office of the defendant in University City, Missouri. On the occasion of this controversy and settlement which took place on January 24, 1956, the defendant gave Phillips a check for $3,090.20. This check was deposited immediately by Phillips and was returned unpaid because payment had been stopped by the defendant. However, on January 25, 1956, the defendant visited Phillips at his place of employment in Pike County, Missouri, and gave Phillips two checks to replace the check previously given. These checks were dated January 25, 1956, and were for $1,090.20 and $2,000 respectively. They were drawn on the State Bank and Trust Company of Wellston, Missouri. They were deposited immediately and both checks were returned unpaid by the drawee bank. However, the check for $1,090.20 was paid later by Western Union money order. The information filed in this case is based on the $2,000 check.

The evidence showed that the check which forms the basis of this case had printed on it "International Industries, Inc." The check was signed "Herb Kaufman" without anything more. Phillips testified that he was dealing with Kaufman individually and knew nothing about a corporation.

Andrew J. Murphy, Jr., an attorney with offices at Louisiana, Missouri, was employed by Phillips to collect the sum due on the two checks that were returned unpaid. The attorney talked to Kaufman by phone on February 3, 1956, and he told defendant the $2,000 check had been dishonored by the bank and returned unpaid and that the same was true of the check for $1,090.20. This telephone call was made by Kaufman in answer to a telephone call of Mr. Murphy. Kaufman told Mr. Murphy that he was calling from a mobile unit which he had in his car and in this conversation he assured Mr. Murphy that he had wired, via Western Union, the sum of $2,000 to pay one of the checks. As stated before, the check for $1,090.20 was subsequently paid by a Western Union money order, but the $2,000 check was never paid. Thereafter, on August 9, 1956, the information forming the foundation of the instant proceeding was filed.

Albert W. Lakebrink, Assistant Treasurer and Manager of the Bookkeeping Department of the State Bank & Trust Company of Wellston, testified that he had custody and control of the records of the bank relating to deposits and credits and debits to the accounts of the customers of the bank. His testimony showed that the $2,000 check had been presented to the bank for payment and that payment was refused because the defendant had insufficient funds in the account to cover the amount of the check. State Exhibit 3 was identified by this witness as the ledger account of the defendant. This record showed that at the close of business January 24, 1956, the defendant had a balance of $510.46 in his account. This was the date the check for $3,090.20 was delivered. On January 25, 1956, the date the $2,000 check and $1,090.20 check were delivered, defendant had a balance of $360.46 and the largest balance thereafter was $947.29. The account was closed by the defendant May 18, 1956. The $2,000 check was presented for

payment on January 30, 1956. On that date defendant had a cash balance in his account of $160.29.

The ledger account (Exhibit 3) was carried under the name "International Industries." State Exhibit 2 was identified by witness Lakebrink as a signature card. The part of this card pertinent to the issues in this case shows the account in the name of "International Industries" and the card was signed by "Herb Kaufman" with the notation "sole owner." Lakebrink testified that only checks bearing the signature "Herb Kaufman" would be paid out of this account.

An examination of the ledger account discloses overdrafts in this account between December 22, 1955, and the date the account was closed. The largest overdraft occurred January 10, 1956, and was in the amount of $1,966.74. However, the very next day $5,000, was deposited. Thereafter, other overdrafts appear, the largest being $183.72.

In the course of direct examination, witness Lakebrink was asked if Kaufman had sufficient credit with the bank to cover the check. However, defendant objected to the question and was sustained by the court. The purport of this question was not covered in any other part of his testimony. Therefore, there was no direct testimony on the existence of sufficient credit to cover the check. There was no evidence offered by the defendant.

◼ We will now direct our attention to the assignments contained in defendant's motion for new trial that state the specific grounds or causes in detail and with particularity. The first assignment alleges the information is fatally defective in that it fails to charge the defendant with a violation of any of the laws of the State of Missouri. We have pointed out hereinbefore that the information follows the wording of § 561.460 and alleges all the facts necessary to bring the defendant within the provisions of said section. The information charges the defendant individually with making and delivering the check. We think the information is sufficient in this respect and the proof tendered by the State sufficiently demonstrates that the act of making and delivering the check in question was defendant's individual act and that the check was drawn against his individual account in the bank. Phillips testified that he was doing business with Kaufman as an individual and knew of no company or corporation in the business deal. The records of the bank introduced in evidence showed the account to be that of Herb Kaufman, the defendant in this case. The signature card showed Herb Kaufman as the "sole owner" of the account carried under the trade name "International Industries." The signature card signed by the defendant demonstrated beyond a doubt that this was an individually owned bank account of Herb Kaufman and that he was doing business under a trade name. The check that forms the basis of this prosecution was not signed by Kaufman as an officer of a corporation. He signed it as an individual and without any other description.

We rule there is sufficient evidence to establish the check as that of Herb Kaufman individually and sufficient to support the description of the check in the information. We further rule that the evidence is sufficient to show that the check was drawn on the account shown in State Exhibit 3, which is the bank account opened by defendant when he signed the signature card —State Exhibit 2. The information is not defective and sufficiently charges the defendant with a violation of § 561.460.

◼ The next assignment is that the court lacked jurisdiction over the subject matter and over the person of defendant. During the trial counsel for defendant contended that the venue was in St. Louis County and not in Pike County because the original check for $3,090.20 given in payment of the scrap iron was delivered in St. Louis County. There is no validity to this contention. The check that consti-

tutes the basis of the offense charged was for $2,000 and was delivered in Pike County.

■ The next assignment is that the check was returned by the bank marked "Drawn against uncollected funds," whereas, the information charged insufficient funds or credit. Witness Lakebrink testified the check was returned because of insufficient funds in defendant's bank account. This was sufficient proof of the charge that the check was returned because of insufficient funds. The evidence clearly shows the amount of funds in the bank account of the defendant on the date the check was delivered by the defendant to Phillips and on the date it was presented to the bank for payment. On none of these dates was there sufficient funds to pay the check.

■ Defendant next contends in his motion for new trial, "That the State failed to prove that proper statutory notice had been give to defendant within a five-day period as provided by law that the check had been dishonored." Section 561.470 provides:

"As against the maker or drawer thereof, the making, drawing, uttering or delivering of a check, draft or order, payment of which is refused by the drawee, shall be prima facie evidence of intent to defraud and of knowledge of insufficient funds in or credit with, such bank or other depositary, provided such maker or drawer shall not have paid the drawee thereof the amount due thereon, together with all costs and protest fees, within five days after receiving notice that such check, draft or order has not been paid by the drawee."

Throughout the trial it was the position of defendant that the notice referred to in the aforesaid section of the statutes had to be given in writing and his counsel asserted an oral notice was ineffective. Defendant contended that the oral notice given by the attorney for Phillips to the defendant was not a compliance with the statute. This section of the statute establishes a rule of evidence. It provides that the failure of the defendant to pay the drawee bank the amount of the check after receiving five days notice that the check was not paid shall be prima facie evidence of fraudulent intent and knowledge on the part of the defendant of the insufficiency of his funds and his credit with the bank. Proof of the giving of the notice referred to in this statute is not an essential element of the offense. If the notice was not given the State had the right to prove fraudulent intent and knowledge of the insufficiency of funds or credit in some other manner. Failure to give the notice would merely prohibit the State from availing itself of the presumption created by the statute. Also, payment by the defendant within the five days would not be a defense to the charge. Such payment would only abrogate the presumption created by the statute. What we have just said may be unnecessary to the contention being examined but is important to another assignment to be discussed. This statute does not call for a written notice. No doubt the Legislature was aware that there are many comparable statutes throughout the other states. Some specifically require a written notice and others do not. If a written notice was contemplated the Legislature would have so stated. We have found no case that holds a written notice is required under a statute similar to § 561.470.

■ The next assignment asserted by defendant in his motion for new trial is that the State failed to prove the defendant did not have credit to his account in the banking institution upon which the check was drawn. Defendant in his assignment points to the overdrafts existing in his account prior and subsequent to the issuance of the check.

It was the duty of the State to prove that defendant had insufficient funds in his account and knew it, and also to prove de-

fendant did not have sufficient credit with the bank for payment of the check and knew it. Section 561.460 requires the State to prove that defendant knew "at the time of such making, drawing, uttering or delivering, that the maker or drawer, has not sufficient funds in or credit with, such bank, * * *, for the payment of such check, * * * *in full,* upon its presentation, * * *." (Emphasis supplied.) This section of the statute makes it an offense to make and deliver a check with intent to defraud, if the defendant knew he had insufficient credit to pay the check in full. We are not assuming that defendant had any credit with the bank, but if he did have credit, it must be sufficient to pay the check in full.

Did the State prove that defendant had insufficient credit with the bank? Section 561.480 defines the word credit to mean "an arrangement or understanding with the bank or depositary, for the payment of such check * * *."

In this case the State had the right to rely on the statutory presumption of fraudulent intent and knowledge on the part of the defendant that he had insufficient funds on deposit or credit with the bank, inasmuch as defendant failed to pay the bank within five days after he was notified the check was not paid by the bank. § 561.470; State v. Taylor, 335 Mo. 460, 73 S.W.2d 378, 95 A.L.R. 476. Under the statute defendant's failure to pay within five days constituted prima facie evidence, not only of the intent to defraud, but also prima facie evidence of defendant's knowledge of the insufficiency of the funds in, or credit with, the bank. The gravamen of the offense charged is intent to defraud and knowledge of the insufficiency of the funds in, or credit with, the bank and because it is difficult to prove this intent and knowledge, the law makes the failure to pay the check within five days prima facie evidence of intent to defraud and the requisite knowledge. This statute has obviated the duty of the State to directly prove the intent and knowledge. The State having shown that the defendant did not pay the check within five days after notice of dishonor, has met the burden of proving the required intent and knowledge and, therefore, has proved that defendant had knowledge of insufficient credit with the bank.

■ However, defendant contends the evidence shows he was permitted to overdraw his account and he further asserts that this serves to destroy the presumption created by § 561.470.

There are some cases in this state wherein the court said the showing of overdrafts in a bank account may be an indication of the extension of a line of credit. State v. Richman, 347 Mo. 595, 148 S.W.2d 796; State v. Felman, Mo.App., 50 S.W.2d 683; State v. Humphrey, Mo.App., 74 S.W.2d 86. However, in none of the aforesaid cases did the showing of overdrafts form the basis of the court's ultimate ruling. In the Richman case the Supreme Court discharged the defendant because the trial court treated the information as charging a felony, whereas, it charged a misdemeanor, which was barred by the statute of limitations. In the Felman case the court held a sufficient deposit had been made by the defendant that had not been credited to his account when the check forming the basis of the charge was presented for payment, thus there was a failure to show intent to defraud. The Humphrey case was similar to the Felman case, the court holding a deposit made by the defendant, which lacked a few cents of being the amount of the check involved, showed a lack of intent to defraud. We have no such mitigating facts in the instant case. We are reluctant to say that a mere showing of the existence of overdrafts without anything more is an indication of an arrangement or understanding with the bank for the payment of a check, or is an indication of the extension of a line of credit. Overdrafts in bank accounts may occur in many ways. Some circumstances surrounding overdrafts show no intention of extending a line of credit. Many times checks have been

honored through a mistake. Other times checks have been honored without knowing the real status of the account until all items were posted in the account.

██ We cannot lose sight of the fact that at the time the $2,000 check was delivered, another check for $1,090.20 was drawn on the same account and delivered by the defendant to Phillips. Neither check was paid by the drawee bank. In determining defendant's intent to defraud and his knowledge of the insufficiency of his credit with the drawee bank we may consider these factors in the light of the issuance and delivery of the two checks. The rule authorizing this consideration may be found in 22 C.J.S. Criminal Law § 688, p. 1111, as follows:

> " * * * where the crime charged is part of a plan or system of criminal action, evidence of other crimes near to it in time and of similar character is relevant and admissible to show the knowledge and intent of accused and that the act charged was not the result of accident or inadvertence. This rule is often applied where the crime charged is one of a series of swindles or other crimes involving a fraudulent intent, for the purpose of showing this intent; * * *."

Also see State v. Hartman, 364 Mo. 1109, 273 S.W.2d 198, loc. cit. 204, and cases cited. The two checks issued simultaneously against the same account and same drawee bank totaled $3,090.20, an amount far in excess of a possible credit line shown by the overdrafts. The statute makes it an offense to make and deliver the check if the credit is insufficient to pay the check in full.

We have held that the State made a prima facie showing of insufficient credit and defendant's knowledge thereof. The evidence of overdrafts in our opinion was insufficient to destroy or rebut the prima facie showing made by the State. There is nothing in the evidence to show that the defendant had any arrangement or understanding with the bank for the payment of the two checks. The evidence in this case is sufficient to show that the two checks were made and delivered with intent to defraud and that defendant knew he did not have sufficient funds in or credit with the bank for the payment of these checks in full.

██ The final assignment made by the defendant in his motion for a new trial is that the court erred in failing to file a written statement of facts and failed to file a written reason for its finding and judgment against the defendant. Supreme Court Rule 26.01, 42 V.A.M.S. provides that in cases tried without a jury the court shall make a general finding and may in addition, in his discretion, find the facts specially. Under this rule the defendant had the right to submit requested findings of fact and declarations of law. If such a request is made it is the duty of the court to make such findings of fact and declarations of law it deems applicable to the case. None were requested by the defendant in this case. In a felony case the rule requires the court to prepare an opinion or give declarations of law to the extent necessary to indicate the court's theory of the law applicable to the case. There is no such requirement in a misdemeanor case. In the instant case the court made a general finding. This was a sufficient compliance with the law. This assignment is ruled against defendant.

It is our conclusion that the judgment of the trial court should be affirmed. It is so ordered.

MATTHES and ANDERSON, JJ., concur.