**STATE of Missouri, Plaintiff-Respondent,**

v.

**Harvey F. EUGE, Defendant-Appellant.**

No. 31058.

St. Louis Court of Appeals.

Missouri.

May 15, 1962.

Motion for Rehearing or Transfer
Denied Sept. 11, 1962.

Harvey F. Euge pro se.

Norman H. Anderson, Pros. Atty., Daniel O'Brien, Asst. Pros. Atty., Clayton, for respondent.

BRADY, Commissioner.

Defendant was found guilty of issuing an insufficient funds check (§ 561.-460, RSMo 1959, V.A.M.S.) and his punishment was fixed by the jury at a fine of $1,000.00 and costs. His appeal was submitted during our March docket. We have not been favored with briefs by the defendant nor by the State, and therefore the record and the assignments of defendant's motion for new trial properly preserving the trial court's alleged errors are for our review. Rules 27.20, 28.02, 28.08, V.A.M.R.

Defendant conducted his own defense at the trial, filed his own after trial motions, and typed the transcript himself. His after trial motions, which we will consider collectively as a motion for new trial, present thirty-five assignments of alleged error, the vast majority of which are too general to comply with Rule 27.20, V.A.M.R. They are vague, indefinite, rambling, and repetitious, and preserve nothing for our review. However, we have ascertained that defendant attempts to raise certain constitutional questions and attacks the information. He also alleges as reversible error the overruling of his plea in abatement, the trial court's action in going to trial over his objections and in denying him time to apply for a writ of prohibition, the denial of his request for a mistrial, the giving of those instructions given by the court and the refusal to give certain instructions he offered. In addition, the defendant questions the sufficiency of the state's evidence to support the verdict.

The defendant was convicted of a misdemeanor, but if a question involving construction of the Constitution is properly presented, jurisdiction would be in the Supreme Court of this state. Article V, § 3, Constitution of Missouri, V.A.M.S. Defendant alleges the trial court erred " * * * in refusing to submit any of defendant's instructions to the jury,

and in doing so denied to him the equal protection of the laws as provided by * * *" the Constitutions of Missouri and of the United States, and of the amendments thereto. There are also two references to " * * * the presumption of innocence * * *." These allegations are insufficient to divest this court of jurisdiction. State v. Brookshire, Mo., 325 S.W. 2d 497 (transf. to Mo.App., 329 S.W.2d 252); State v. Euge, Mo.App., 349 S.W. 2d 502 at [1–3], pp. 503–504.

■ The attacks which the defendant makes upon the information are without merit. It plainly charges that on July 16, 1960, in St. Louis County, the defendant, with intent to cheat and defraud, obtained $250.00 from the Lemay Bank and Trust Company, by issuing his check drawn upon the Chippewa Trust Company, knowing that there were no funds in the latter to pay the check upon its presentation. The information follows the wording of the statute and alleges all the facts necessary to bring the defendant within the provisions thereof. State v. Kaufman, Mo. App., 308 S.W.2d 333.

■ The "plea in abatement" which the defendant urges the trial court should have sustained was originally filed in another trial, arising out of this same occurrence, which resulted in a hung jury. This matter also brings into consideration the defendant's contentions of error with regard to the trial court's action in proceeding with the trial on September 26th, 1960, over his objection. The transcript which the defendant prepared, and which the State, by the Prosecuting Attorney for St. Louis County, approved, contains two recitations of what happened on the day of, and just prior to, trial. The record proper states, and defendant admits it so states, that on the 20th of September, 1960, the defendant was appearing on another cause before the trial court and was informed that the cause would be tried September 26th. The record proper also sets out that on that day, "Defendant appears in person and as attorney

pro se also announces ready for trial. Examination of jurors on voir dire begun, progressed and concluded, at the hour of 3:10 P. M. 18 qualified and competent jurors are found. State and defendant granted till tomorrow morning at 9:30 A. M. to make their respective challenges." However, defendant has also included in the transcript what he contends to be " * * * the true record as it happened and in direct conflict to the record as made." In that portion of the transcript, he contends he orally objected to trial on the 26th because the case had been previously continued until October 17th; that he filed the amended plea in abatement which he had filed in the case that resulted in a hung jury; and that he was " * * * coerced into trial of the cause without a hearing on his plea of abatement as filed." Our concern that the defendant not be penalized because he has no counsel cannot be extended to accepting a version of what happened that is not only admittedly not included in the official record of the proceedings but actually contradicts that record. Defendant does not allege that his defense was in any way hampered by this action of the trial court except that he wanted to file certain pleas, such as in abatement, which the record discloses he in fact did file on the 27th of September in his motion to discharge the jury and declare a mistrial for lack of jurisdiction in the trial court. A perusal of this motion discloses that it is based on the contention that the cause was improperly heard on that day, a matter above disposed of adversely to defendant, and upon the contentions that: (1) until the plea in abatement had been ruled, the court could not continue; and, (2) that if the plea in abatement was overruled, defendant could appeal that ruling and thus prevent the trial from proceeding. These contentions are without merit. The record discloses that the trial court did in fact overrule this "Plea In Abatement." Moreover, although in his motion for new trial and in the notice of appeal he has filed, the defendant seeks to appeal this specific action of the trial court, he cannot do so. We

specifically ruled this same point adversely to the defendant in State v. Euge, Mo.App., 349 S.W.2d 502 at [5], page 504. Neither is there any provision in the Criminal Code to prevent the trial court from proceeding when, to be doubly sure it was proceeding properly, it overruled such a motion. In State v. Euge, Mo.App., 349 S.W.2d 502, the defendant had failed to assign as error in his motion for new trial the overruling of his "Plea In Abatement." Evidently learning from experience, defendant included such an assignment of error in the motion for new trial in the instant case. We pass therefore to a consideration of the merits of such an assignment of error.

The "Amended Plea In Abatement" alleges that "* * * a few days prior * * *" to the date on which the check incident occurred, a magistrate action was filed by Atomic Fireworks, Inc. of Missouri, hereinafter referred to as Atomic, against the defendant upon a debt that company alleged defendant owed it; that this action was by attachment and a "* * * writ of garnishment * * *" was issued therein and served upon the Lemay Bank and Trust Company; that defendant was not aware of this proceeding; that the affidavit upon which the magistrate issued the attachment was defective on its face and not in accordance with "Section 521.060 of the R.S. of Missouri, 1949 * * *"; that defendant was not personally served nor was any other service had upon him in the action instituted by Atomic; that "* * * there was defective service upon the said Lemay Bank and Trust Company, as garnishee; * * *" that the petition in the action filed by Atomic failed to state a cause of action against the defendant in that it failed to allege "* * * the place of and the date, and time, and the manner in which the said debt was due * * *" and further failed to state where plaintiff therein or this defendant resided, "* * * or the circumstances by which the said debt was contracted or any fact giving said court legal and valid jurisdiction thereof." The "Amended Plea In Abatement" then alleged

that the magistrate court in the Atomic case had no jurisdiction to proceed in that case and therefore the Lemay Bank and Trust Company "* * * was under no legal duty or obligation to respect the said attachment and garnishment or fear any consequences therefrom * * *." In short, the defendant sought to try the validity of the attachment issued in the Atomic suit in this action, and contends it was prejudicially erroneous not to do so.

■ The amended plea in abatement filed in the action which resulted in a hung jury was verified by defendant's affidavit. See § 545.830, RSMo 1959, V.A.M.S. The function of a plea in abatement is to bring to the court's attention matters outside the record which render the indictment or information invalid, State v. Hughes, Mo. App., 223 S.W.2d 106 at [4–7], page 109. For example, in State v. Bright, Mo.App., 263 S.W. 559, the defendant set up in such a plea the fact that she was compelled to appear and testify before the grand jury which later indicted her without having been advised that she was being investigated or the nature of the inquiry. The evidence thus procured was considered and relied upon in securing the indictment against her. The distinction between a matter of that nature, which directly attacks the validity of the indictment, and the matters contained in this "Plea In Abatement" is obvious. In the instant case, the best that can be said of the matters pleaded in the "Plea In Abatement" was that it constituted a defense to Atomic's action. The allegations therein in no way rendered invalid or void this information. The trial court properly overruled what defendant designated a plea in abatement.

■ There is no merit in defendant's contention that he should be granted a new trial because the trial court refused to allow him a continuance to apply to this court for a writ of prohibition. It would be ridiculous to give him a new trial so that he could present to us in an application for such a writ the very contentions as to

lack of jurisdiction he stated in his "Motion To Discharge Jury And Declare A Mistrial For The Lack Of Jurisdiction Of This Court To Proceed In This Cause", which he alleges the trial court erroneously over-ruled. These matters have now been presented to us by his allegations in his motion for new trial, and all are herein ruled adversely to defendant.

We now come to a consideration of those allegations of error contained in the defendant's after trial motions that require a consideration of the evidence. Mr. Wind, president of Lemay Bank, testified that Euge had had an account at the bank in the past; that the bank was served with a garnishment with respect to that account and a writ of attachment on Friday, July 11, 1958; that at that time the balance in the defendant's account was $375.42; that he talked with the defendant on Monday, July 14th, showed him the papers served on the bank and explained to him that for this reason the bank would not honor any items drawn against the account. On cross-examination he testified the balance in the account as of trial (September 27, 1960) was $500.00; that the bank was advised by its counsel to honor the writ of attachment, although he did not know what investigation of the validity of the attachment was made, if any; and that the bank has a charge-back system whereby any bad check would be charged against the customer's account. The defendant repeatedly cross-examined the witness on whether or not he knew that " * * * the garnishee's duty is to definitely check into such an attachment?" and other matters pertaining to the validity of the attachment. In view of our ruling herein upon the attempt to plead the invalidity of the attachment as a plea in abatement, it will not be necessary to include that testimony.

Mrs. Murray testified that she was the drive-in window teller at Lemay Bank on the occasion when the defendant presented the check drawn on the Chippewa Trust Company, and that he took $171.13 of the $250 thereof in cash, and deposited $78.87.

At the opening of his cross-examination of this witness, the defendant admitted that he issued the check referred to. Mrs. Murray's further testimony was that defendant told her he had over the amount of the check on deposit; that in reliance thereon she cashed the check; and that defendant in no way prevented her from calling the Chippewa Bank but that she did not do so.

Mr. Wind then resumed his testimony and stated that the check was returned to the Lemay Bank from the Chippewa Bank marked "No account"; that the tellers may not have been "specifically" informed of the attachment but the account was "flagged"; that this means that a warning was put on the account.

Sam Antonacci testified that his duties at the Chippewa Bank were to supervise the posting of all checks and deposits, take care of checks returned for various reasons, and handle the general bookkeeping of that bank; that the defendant opened an account at the Chippewa Bank in May of 1952; that on September 16, 1957 this account had a deficit of 62¢, and the account was closed as of that date; that sometime later they received a deposit of $4.00 in cash which the officers of his bank instructed him to return to the defendant by "treasurer's check" with the information that they did not want defendant's account; that this was done by a letter accompanying the check, and the witness identified the check for $4.00 cashed by defendant, and a copy of the letter sent to him. On cross-examination this witness testified that the general banking procedure as to charge-offs was that such are not done when the funds in the account are attached, or where the charge-off would result in an overdraft.

Robert G. Burridge testified that in 1958 he was an Assistant Prosecuting Attorney for St. Louis County and that he represented the state at the defendant's preliminary hearing; that the defendant then testified that he cashed this check at Lemay Bank, received $171 and some odd cents in cash, and deposited the remainder, and that he

then knew he had no funds in the Chippewa Trust Company. Cross-examination was taken up with defendant presenting his contention that since he had a deposit in the Lemay Bank sufficient to cover this check, he could not be defrauding that bank which would charge the check against his own money which it held, asking the witness whether or not in his opinion as a lawyer this contention was correct, and with the witness's explanation that it was not, for the reason that defendant had obtained money that the bank was not entitled to pay out because of the attachment and might have to replace and pay to Atomic. The matter is not presented for our ruling, but the entire line of questioning was improper, over the repeated valid objections interposed by counsel. Defendant did not ask questions but made abstract statements, and attempted to argue legal conclusions with the witness. The same matters were repeated over and over again.

The State having rested, and the defendant's "Motion For Acquittal" having been overruled, the defendant presented the clerk of the magistrate court of Jefferson County as his first witness. By this witness and over the objections of the State, the defendant had read into the record the minute entries in Atomic's action against the defendant in which the attachment heretofore referred to was issued. It is not necessary to go into these more fully than to state that by the date of trial the circuit court of that county had issued a preliminary writ of prohibition directed to the magistrate court of that county, and there the matter rests.

Jacob Pfeiffer, deputy constable, testified that he did not know the defendant personally and if he had served any papers in Atomic's case on defendant, did not remember it.

Fred J. Hoffmeister, attorney for Lemay Bank, was called as a witness and testified that he examined the attachment served on that bank and gave the bank his opinion as to it, but refused, on the grounds of privilege, to relate what advice he gave the bank with regard to the attachment. However, he later gave as his opinion that there were no irregularities appearing on the face of the paper served on the bank.

The defendant then took the stand. He testified that when he was informed by the Lemay Bank of the attachment, " * * * I looked at it and I told them that there was no service on me at the time and that it was of no force and value, which I knew because of previous study * * *." He further testified that he cashed this check " * * * with the intention that it was the same as and no different than a Lemay Bank check that would be directly charged back against my account and I did that to gain the rightful possession of my money and my property that the Lemay Bank was withholding from me without any due process." On cross-examination he verified Wind's testimony that he was told of and even shown the attachment; that he knew he had no account at the Chippewa Trust; and that it was his thought that since he had an account in the Lemay Bank he could cash a check at that bank drawn on any bank because " * * * it would have the same force and effect, it would be charged off as that check, as their check." The defendant was then asked if he had ever before been convicted of issuing bad checks and testified that he had been convicted "On the other half of this account, which is on appeal in this court. Q. Have you ever been convicted before? A. There was one in the City on an insufficient fund check, which is also on appeal in the St. Louis Court of Appeals." The transcript at this point contains this notation, "(appears the court reporter omitted something here; to be added in a supplemental transcript if anything.)" No objection is shown in the transcript as prepared and filed by the defendant nor was any supplemental transcript filed. Accordingly, the allegation of error that the trial court failed to direct a mistrial because of

the action of the state in introducing such matters into the trial need not be ruled upon.

This concluded the evidence, and upon overruling the "Defendant's Motion For Acquittal", the trial court instructed the jury. We find no error in the instructions given by the court. Instruction No. 1 required the jury to find " * * * beyond a reasonable doubt * * *" that the defendant " * * * unlawfully and knowingly * * *" in order to obtain monies in the value of $250.00, with intent to defraud, uttered this check, and further required them to find that at the time of utterance defendant knew he had " * * * no sufficient funds in or credit with said Chippewa Trust Company * * *" and upon so finding authorized a verdict of guilty and punishment as stated in the statute, and " * * * unless you find all the facts to be you will acquit the defendant." There is no doubt that this instruction required the finding of all the required elements of the offense. Neither can there be any doubt but the submissions were amply supported by the evidence, and that allegation of error is ruled adversely to appellant.

Instruction No. 2 was the usual and repeatedly approved "presumption of innocence" instruction, State v. Velanti, Mo., 331 S.W.2d 542. Instruction No. 3 was a cautionary "credibility of the witnesses" instruction, correctly stating the law thereto. Instruction No. 4 informed the jury that " * * * argument of counsel is for the purpose of aiding you to reach a proper verdict by refreshing in your minds the evidence * * *" but cautioning the jury that it was their duty to be governed by the law as given them by the court in the instructions, and " * * * to be governed in your deliberations by the evidence as you understand it * * *." Instruction No. 5 required that all jurors agree to the verdict, and that the foreman sign it. It was not erroneous to give these instructions. We might here

point out that this transcript fails to disclose any objection by the defendant to the giving of these instructions, State v. Rush, Mo., 286 S.W.2d 767; State v. Lawson, Mo., 290 S.W.2d 84; but we have nevertheless reviewed them.

The trial court refused to give Instruction A, which stated that the State must prove beyond a reasonable doubt that a five-day notice that his account was insufficient was given to the defendant prior to his arrest, and directed acquittal, absent such a finding. In State v. Kaufman, supra, this court held that proof of the giving of this notice provided for by § 561.470, RSMo 1959, V.A.M.S., is not an essential element of an offense under § 561.460, supra, but that failure to give the notice would prevent the State from availing itself of the presumption of intent created by § 561.470, supra. Under the evidence in this case, there was no need to rely upon the presumption. In any event, even payment within the five days (an event that did not here occur) would only have abrogated the presumption. It would not have constituted a defense to the charge requiring, as this instruction stated, acquittal. State v. Kaufman, supra.

Instructions B, C, F, and G, presented the "charge off" theory defendant attempted to present throughout these proceedings, and also the theory that the attachment was invalid. Each of these instructions directed acquittal on those theories, " * * * notwithstanding the fact that defendant knew that he did not have any funds or credit with the Chippewa Bank and Trust Company * * *" and also notwithstanding the fact of the attachment on his funds in the Lemay Bank. We think it clear from what has been said herein that such an instruction would have amounted to an adoption by the court of defendant's defenses as a matter of law, and these instructions were correctly refused. Instructions D, E, and H were cautionary instructions that perhaps could have been given, although they

were not as clearly stated as those covering the same matters given by the court, but it is not reversible error to refuse such instructions when the matters they present were covered by other instructions correctly stating essentially the same matter. We find no error in the trial court's actions with regard to the giving and refusal of these instructions.

We find no reversible error in this record. The judgment should be affirmed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of the court. The judgment is affirmed.

ANDERSON, P. J., and WOLFE, J., concur.

RUDDY, J., not participating.