**Andrew E. PARKER, Appellant,**

v.

**COLOR TILE SUPERMART, INC., Respondent.**

**No. 46078.**

Missouri Court of Appeals, Eastern District, Division Three.

May 31, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 15, 1983.

Application to Transfer Denied Sept. 20, 1983.

Mark I. Bronson, Newman & Bronson, St. Louis, for appellant.

Joseph H. Mueller, J.C. Jaeckel, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Keaney, St. Louis, for respondent.

---

1. In view of our disposition of this case, it is not necessary to consider appellant's points.

CRIST, Judge.

A jury awarded plaintiff Andrew Parker $25,000 actual damages and $150,000 punitive damages on his claim that defendant Color Tile Supermart, Inc., maliciously prosecuted him under the City of St. Ann, Missouri, bad check ordinance. However, the trial judge concluded plaintiff had failed to make a submissible case and set the verdict aside, sustaining defendant's motion for judgment in accordance with its motion for a directed verdict at the close of all the evidence. The trial judge further ordered that in the event of a reversal on appeal, plaintiff must agree to remit most of the actual and punitive damages awarded or face a new trial on the issue of damages. Plaintiff's points on appeal assert the submissibility of his case and the impropriety of the ordered remittitur. We hold plaintiff failed to make a submissible case of malicious prosecution, and so do not review the remittitur ordered.

■ A plaintiff makes a submissible case of malicious prosecution on evidence of: (1) the commencement of a prosecution against plaintiff; (2) its legal causation by defendant; (3) its termination in favor of plaintiff; (4) the absence of probable cause therefor; (5) the presence of malice; and (6) damage to plaintiff therefrom. *Hoene v. Associated Dry Goods Corporation,* 487 S.W.2d 479, 483 (Mo.1972). We have concluded the evidence fails to support the absence-of-probable-cause requirement in element (4), elaborated in *Palermo v. Cottom,* 525 S.W.2d 758, 764 (Mo.App.1975) as "reasonable grounds for suspicion, supported by circumstances in evidence sufficiently strong to warrant a cautious man in his belief that the person accused is guilty of the offense charged."

The facts are not disputed, and we key our iteration of them to show only the deficiency in plaintiff's case.

Plaintiff's hunting trip in October, 1978, ended before it began, in the Bank of St. Peters parking lot, when St. Peters police officers spread-eagled him against a car, handcuffed him, and hauled him to the St. Peter's jail. The police officers apparently had responded to a call from a bank employee who had become anxious watching plaintiff and his hunting companion handle their firearms in the parking lot. The police ran a routine check by radio on both men, which revealed plaintiff was wanted on an outstanding warrant. Whereupon plaintiff was unceremoniously reduced to custody.

The warrant stemmed from plaintiff's purchase of merchandise from defendant in July, 1977, for which he wrote a $41.33 personal check. The drawee bank returned the check to defendant unpaid in mid-August because of insufficient funds in plaintiff's account, and also notified plaintiff of that fact. Plaintiff's wife testified "I think we went down and deposited money for it so it could clear the next time." There is no evidence, however, that the deposit was brought to defendant's attention, so there was no "next time." Instead, two weeks later defendant caused the St. Louis County Prosecuting Attorney to mail to plaintiff a "ten-day notice" that unless he made arrangements with defendant within ten days to make the check good, "upon further complaint a warrant will be issued and prosecution proceedings instituted without further notice to you." Plaintiff testified he did not receive the ten-day notice, so he made no arrangements with defendant to pay the amount of the check. Thus, in January, 1978, defendant complained to the St. Ann Police Department and the warrant issued that resulted in plaintiff's arrest ten months later.

■ The St. Ann bad check ordinance, codified at St. Ann, Mo.Rev. Ordinances art. XIII, §§ 13–34 and 13–35, is a nearly verbatim restatement of §§ 561.460 and 561.-470, RSMo.1969 (repealed 1977), and its substance is to declare it a misdemeanor to knowingly make checks drawn on accounts with insufficient funds with the intent to defraud. Mindful that the absence *vel non* of probable cause is a question of law for the court, not a question of fact for the jury, *Dodson v. MFA Insurance Co.,* 509 S.W.2d 461, 467–68 (Mo.1974); and see: Annot., 87 A.L.R.2d 183, 189 (1963), and that in

making that determination "[w]e must consider the facts as the prosecuting party could have reasonably believed them to be under the circumstances at the time," *Palermo v. Cottom,* 525 S.W.2d at 764, we conclude defendant had sufficient reason to initiate plaintiff's prosecution. Plaintiff had defendant's goods, and defendant had plaintiff's dishonored check. Plaintiff did not contact defendant after receiving notice the check was dishonored, and defendant still heard nothing after it initiated the prosecuting attorney's ten-day notice. And after five months, defendant could have reasonably concluded plaintiff intended to and did acquire and keep defendant's merchandise by delivering a check that was worthless when written and which plaintiff would never make good.

Plaintiff argues he established the absence of probable cause by proving he lacked the requisite intent to defraud that conviction under the ordinance requires. Pointing out that he immediately deposited the amount of the dishonored check in his checking account upon receiving the notice of insufficient funds, plaintiff contends the absence of intent to defraud was established as a matter of law under the proviso in § 13–35 of the St. Ann ordinance:

> As against the maker or drawer thereof, the making, drawing, uttering or delivering of a check, draft or order, payment of which is refused by the drawee, shall be prime [sic] facie evidence of intent to defraud and of knowledge of insufficient funds in or credit with, such bank or other depositary, *provided* such maker or drawer shall not have paid the drawee thereof the amount due thereon, together with all costs and protest fees, within ten (10) days after receiving notice that such check, draft or order has been paid by the drawee. (Emphasis supplied)

Our rejoinder is, first, the drawee bank never paid the check, so the proviso is not applicable. Second, the ordinance would not aid plaintiff in any event. Plaintiff's payment to the drawee would preclude the prosecution's using the presumptions of fraudulent intent and knowledge of insufficient funds that the ordinance creates. *See: State v. Kaufman,* 308 S.W.2d 333, 338 (Mo.App.1957) (interpreting § 561.470, RSMo.1969, the now-repealed counterpart of § 13–35). But we fail to see how that payment, if not brought to defendant's attention, could affect its otherwise reasonable belief it had been defrauded.

Plaintiff's other argument on the absence of intent to defraud proceeds from the fact he paid defendant the amount of the bad check by money order in May, 1978 (five months before his arrest) in response to a collection effort by one of defendant's store managers. Of course, in neither logic nor law does belated payment of a dishonored check imply the absence of an earlier intent to defraud. *State v. Kaufman,* 308 S.W.2d at 338; *State v. Harden,* 613 S.W.2d 700, 703 (Mo.App.1981). But the focus of our inquiry is not plaintiff's guilt or innocence, but whether defendant could reasonably believe when it initiated the prosecution that plaintiff was guilty of the offense charged. We stated earlier our conclusion that it could.

Affirmed.

CRANDALL, P.J., and REINHARD, J., concur.